Case 1:24-cv-00150   Document 1-1   Filed 02/16/24   Page 1 of 132

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

_____

ZION TREADWELL

                    Petitioner-Plaintiff,

For a Judgment Pursuant to CPLR Art. 78 and
42 U.S.C. § 1983

          —against—

THE STATE UNIVERSITY OF NEW YORK
BUFFALO STATE UNIVERSITY a/k/a THE
STATE UNIVERSITY OF NEW YORK BUFFALO
STATE COLLEGE;

STUDENT CONDUCT AND COMMUNITY
STANDARDS OFFICE OF STATE UNIVERSITY
OF NEW YORK AT BUFFALO STATE;

NINA G. PIERINO, in her individual and official
capacity as Associate Director of Student Conduct;

STEVEN CAHOON, in his individual and official
capacity as Investigator with the University Police
Department at State University of New York at
Buffalo State;

JOHN DOE(S), in his individual and official
capacity as Board Member of Buffalo State Student
Conduct Board; and

JANE DOE(S), in her individual and official
capacity as Board Member of Buffalo State Student
Conduct Board.

                    Respondents-Defendants.

_____

**NOTICE/SUMMONS OF
VERIFIED PETITION/COMPLAINT**

Index No.:

Oral Argument Requested

## <u>NOTICE OF PETITION</u>

| | |
|---|---|
| Nature of action: | Article 78 Special Proceeding. |
| Moving Party: | Petitioner-Plaintiff, Zion Treadwell. |
| Directed To: | Respondent-Defendants, the State University of New York Buffalo State University a/k/a SUNY Buffalo State College; Student Conduct and Community Standards Office of State University of New York at Buffalo State; Nina G. Pierino, in her individual and official capacity as Associate Director of Student Conduct; Steven Cahoon, in his individual and official capacity as Investigator with the University Police Department at State University of New York at Buffalo State; John Doe(s) in his individual and official capacity as Board Member of Buffalo State Student Conduct Board; and Jane Doe(s) in her individual and official capacity as Board Member of Buffalo State Student Conduct Board. |
| Date and Time: | To be Determined by the Court. |
| Place: | To be Determined by the Court. |
| Supporting Papers: | January 30, 2024 verified petition, with exhibits. |
| Answering Papers: | If any, must be served at least five days before the return date of this special proceeding in accordance with CPLR § 7804. Petitioner intends to serve reply papers in accordance with any Court order, the Court's local rules, or agreement with respondent, which may include, without limitation, a supporting memorandum of law. |
| Relief Requested: | An order and judgment in favor of petitioner: (1) declaring the disciplinary determinations, sanctions, and actions taken and made by Respondents as against Petitioner invalid as (a) arbitrary and capricious under CPLR § 7803(3) and Respondent's Code, (b) in violation of lawful procedure under CPLR § 7803(3) and Respondent Buffalo State's Code of Conduct, (c) the product of an abuse of discretion as to the outcome of the proceeding in accordance with CPLR § 7803(3) and Respondent Buffalo State's Code of Conduct, (d) the product of an abuse of discretion as to the measure and mode of penalty and discipline imposed under CPLR § 7803(3) and Respondent Buffalo State's Code of Conduct, and (e) not supported by substantial evidence under CPLR § 7803(4) and Respondent Buffalo State's Code of Conduct; (2) granting affirmative relief in the form of |

-2-

expunging any and all referenced to the disciplinary issue at issue from Petitioner's academic record; (3) awarding Petitioner restitution and/or damages for all losses and damages sustained by him as a result of Respondents' unlawful actions; and (4) awarding Petitioner any other or further relief that the Court considers just and proper.

Grounds for Relief:     N.Y. C.P.L.R. §§ 7801, 7803, 7804 (McKinney 2022); 42 U.S.C. §§ 1983 and 1988; Title IX (34 C.F.R. § 106.45, *et seq.*); and due-process considerations under the New York State Constitution and the U.S. Constitution.

Oral Argument:     Requested.

Dated: January 30, 2024
       Buffalo, New York

**RUPP PFALZGRAF LLC**
*Attorneys for Petitioner*

By:    _____
            R. Anthony Rupp III, Esq.
       1600 Liberty Building
       Buffalo, New York 14202
       (716) 854-3400

-3-

TO: **THE STATE UNIVERSITY OF**
 **NEW YORK AT BUFFALO STATE**
 *Respondent*
 1300 Elmwood Avenue
 Buffalo, New York 14222

 **STUDENT CONDUCT AND**
 **COMMUNITY STANDARDS OFFICE**
 **OF STATE UNIVERSITY OF**
 **NEW YORK AT BUFFALO STATE**
 *Respondent*
 1300 Elmwood Avenue
 Bengal Hall 14
 Buffalo, New York 14222

 **NINA G. PIERINO**
 *Respondent*
 1300 Elmwood Avenue
 Bengal Hall 14
 Buffalo, New York 14222

 **STEVEN CAHOON**
 *Respondent*
 1300 Elmwood Avenue
 Chase Hall
 Buffalo, New York 14222

-4-

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

ZION TREADWELL

                         Petitioner-Plaintiff,                **VERIFIED PETITION/**
                                                              **COMPLAINT**

For a Judgment Pursuant to CPLR Art. 78 and
42 U.S.C. § 1983

            —against—

THE STATE UNIVERSITY OF NEW YORK
BUFFALO STATE UNIVERSITY a/k/a THE
STATE UNIVERSITY OF NEW YORK BUFFALO
STATE COLLEGE;

STUDENT CONDUCT AND COMMUNITY
STANDARDS OFFICE OF STATE
UNIVERSITY OF NEW YORK BUFFALO STATE
UNIVERSITY;

NINA G. PIERINO, in her individual and
official capacity as Associate Director of Student
Conduct;

STEVEN CAHOON, in his individual and
official capacity as Investigator with the
University Police Department at State University
of New York Buffalo State University;

JOHN DOE(S), in his individual and official
capacity as Board Member of Buffalo State Student
Conduct Board; and

JANE DOE(S), in her individual and official
capacity as Board Member of Buffalo State Student
Conduct Board.
                         Respondents-Defendants.

            Petitioner-Plaintiff Zion Treadwell (hereinafter, "Petitioner"), by his attorneys,

RUPP PFALZGRAF LLC, R. ANTHONY RUPP III, ESQ., for his Verified Petition and

Complaint against the Respondents-Defendants (hereinafter, "Respondents"), respectfully

alleges and states:

## PRELIMINARY STATEMENT

1.      Petitioner brings this hybrid action/special proceeding to, among other

things, annul the September 13, 2023 decision of Respondent Buffalo State Student Conduct

Board ("Board") finding Petitioner responsible for non-consensual sexual contact and disruptive

behavior.

2.      As set forth below, the Board's decision was made in violation of lawful

procedure and effected by error of law, arbitrary and capricious, an abuse of discretion, and not

supported by substantial evidence in the record.

3.      Petitioner brings this petition under Article 78 of the CPLR seeking a

Judgment and Order declaring:

(1)      that the disciplinary determinations, sanctions, and actions taken

and made by Respondents as against Petitioner, as set forth more fully

below, invalid as

a)      arbitrary and capricious pursuant to CPLR 7803(3) and

Respondent Buffalo State's Code of Conduct;

b)      in violation of lawful procedure pursuant to CPLR 7803(3)

and Respondent Buffalo State's Code of Conduct;

c)      the product of an abuse of discretion as to the outcome of

the proceeding pursuant to CPLR 7803(3) and Respondent Buffalo

State's Code of Conduct;

2

d)      the product of an abuse of discretion as to the measure and mode of penalty and discipline imposed pursuant to CPLR 7803(3) and Respondent Buffalo State's Code of Conduct; and

e)      not supported by substantial evidence pursuant to CPLR 7803(4) and Respondent Buffalo State's Code of Conduct,

(2)      granting affirmative relief in the form of expunging any and all referenced to the disciplinary issue at issue from Petitioner's academic record,

(3)      awarding Petitioner restitution and/or damages for all losses and damages sustained by him as a result of Respondents' unlawful actions, and

(4)      awarding any such other or further relief as the Court deems just and proper.

4.      The process the Conduct Board employed in hearing Petitioner's case and rendering its decision also resulted in multiple violations of Petitioner's Constitutional rights under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution and New York Constitution.

5.      Petitioner also brings a combined civil action against Respondents for violations of his civil rights and seeks monetary damages and other remedies this Court finds appropriate.

3

Case 1:24-cv-00150 Document 1-1 Filed 02/16/24 Page 8 of 132

## JURISDICTION

6.      This Court has jurisdiction over this matter under N.Y. C.P.L.R. §§ 7801-7806 (McKinney 2022).

7.      This matter is ripe for adjudication, as Petitioner has exhausted all available administrative remedies, and he now seeks Article 78 review of a final administrative determination.

8.      This Court has concurrent jurisdiction to hear Petitioner's federal causes of action under 42 U.S.C. §§ 1983 and 1988 and under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

## VENUE

9.      Venue is proper because this petition-complaint is brought within the judicial district where Respondents made the determination complained of; venue lies in Erie County under CPLR § 506(b).

## PARTIES

10.     Petitioner, Zion Treadwell ("Petitioner"), was and is a citizen of New York at all relevant times. Mr. Treadwell is an undergraduate student enrolled at State University of New York Buffalo State University.

4

11.     Respondent, State University of New York Buffalo State University a/k/a State University of New York Buffalo State College ("Buffalo State"),[1] is a municipal corporation organized and existing under the laws of the State of New York.

12.     Respondent, Student Conduct and Community Standards Office ("Student Conduct Office") is an office of Buffalo State, which possesses the exclusive authority to adjudicate and enforce matters concerning infractions and violations of the Student Code of Conduct ("Code").

13.     Respondent, Nina G. Pierino, was and is a citizen of New York State at all relevant times.  Respondent is employed by Respondent Buffalo State, and was, at all times hereinafter mentioned, acting within the scope of her employment and official capacity as Associate Director of Student Conduct at Buffalo State at the time of the incidents giving rise to this lawsuit.  In addition, Respondent Pierino is being sued in her individual capacity for damages caused by her actions and/or conduct.

14.     Respondent, Steven Cahoon, was and is a citizen of New York State at all relevant times.  Respondent is employed by Respondent Buffalo State, and was, at all times hereinafter mentioned, acting within the scope of his employment and official capacity as Investigator with the University Police Department at Buffalo State at the time of the incidents giving rise to this lawsuit.  In addition, Respondent Cahoon is being sued in his individual capacity for damages caused by his actions and/or conduct.

---

[1]     In an abundance of caution, given the various names the institution is known by and uses in its official documents, we have named Respondent Buffalo State as State University of New York Buffalo State University a/k/a State University of New York Buffalo State College in order to properly name the respondent using its official name.

5

15.     Respondent, John Doe, was and is a citizen of New York State at all relevant times.  Respondent is employed by Respondent Buffalo State, and was, at all times hereinafter mentioned, acting within the scope of his employment and official capacity as Board Member of the Student Conduct Board at Buffalo State at the time of the incidents giving rise to this lawsuit.  At this time, Respondent John Doe is not known to Petitioner, but Petitioner will move to amend his complaint when he learns the identity of this Buffalo State employee.  In addition, Respondent John Doe is being sued in his individual capacity for damages caused by his actions and/or conduct.

16.     Respondent, Jane Doe, was and is a citizen of New York State at all relevant times.  Respondent is employed by Respondent Buffalo State, and was, at all times hereinafter mentioned, acting within the scope of her employment and official capacity as Board Member of the Student Conduct Board at Buffalo State at the time of the incidents giving rise to this lawsuit.  At this time, Respondent Jane Doe is not known to Petitioner, but Petitioner will move to amend his complaint when he learns the identity of this Buffalo State employee.  In addition, Respondent Jane Doe is being sued in her individual capacity for damages caused by her actions and/or conduct.

17.     Petitioner has standing to pursue the claims asserted herein and this hybrid action/special proceeding was timely commenced.

6

## FACTUAL AND PROCEDURAL BACKGROUND

**A. Consensual Sexual Encounters
Between Petitioner and Complainant.**

18.     On March 4, 2023, Mr. Treadwell engaged in a consensual sexual encounter with Ms. Arianna Newell ("Complainant").  This was the second consensual sexual encounter between Mr. Treadwell and Complainant.

19.     Mr. Treadwell and Complainant met on BLK, a dating app exclusively for Black singles.

20.     Upon information and belief, Complainant is not and never was a student enrolled at Buffalo State.

21.     Upon information and belief, after matching on BLK and exchanging messages, Complainant and Petitioner agreed to meet up for their first consensual sexual encounter in October of 2022 ("October encounter").

22.     For the October encounter, Complainant arranged with Mr. Treadwell for him to pay for Complainant's Uber rides to and from Mr. Treadwell's dorm at Buffalo State.

23.     While visiting Mr. Treadwell at his dorm during the October encounter, Complainant engaged in consensual sexual intercourse with Mr. Treadwell.

24.     Upon information and belief, following the October encounter, Complainant indicated her desire to be in a committed relationship with Mr. Treadwell. However, Mr. Treadwell was not interested in a committed relationship with Complainant at that time.

25.     Furthermore, upon information and belief, Mr. Treadwell ceased communicating with Complainant on BLK when he noticed strange accounts attempting to

7

follow him and interact with him on his social media accounts, which he believed to be the actions of Complainant.

26.     On March 4, 2023, Mr. Treadwell reconnected in a conversation with Complainant on BLK.  The two exchanged messages using the BLK app and ultimately agreed to meet again.

27.     Similar to the October encounter, Complainant again arranged with Mr. Treadwell to pay for Complainant's Uber rides to and from Mr. Treadwell's dorm at Buffalo State.

28.     Upon information and belief, Complainant arrived at Mr. Treadwell's dorm, where Mr. Treadwell was editing footage for his club rugby team and did not immediately acknowledge Complainant as she entered his room.

29.     Upon information and belief, as Mr. Treadwell continued to edit footage at his desk, Complainant approached Mr. Treadwell while he was seated at his desk and asked him, "You're going to act like a stranger?"

30.     Upon information and belief, Complainant then initiated physical contact with Mr. Treadwell by sliding her hands down his chest from behind.  She then removed her own clothing without any assistance, prompting, or instruction from Mr. Treadwell.  Next, Complainant bent over a nearby chair without any prompting, instruction, or assistance from Mr. Treadwell.  Complainant then signaled that she wanted sexual intercourse and Mr. Treadwell consented, entering Complainant's vagina from behind.  Complainant began to moan, then reached behind Mr. Treadwell's hips and put her hands on Mr. Treadwell's buttocks to pull him closer to her.  Complainant continued to moan as Mr. Treadwell thrusted into her.  After about

two to three minutes of sexual intercourse, the consensual sexual intercourse ended ("March encounter").

31.     After the consensual sex concluded, Mr. Treadwell told Complainant that she could leave.

32.     Upon information and belief, Complainant became angry with Mr. Treadwell and left his dorm to locate her Uber.

## B. The Complaint and Buffalo State's Actions Under the Code of Conduct.

33.     Upon information and belief, on March 5, 2023, Complainant filed a complaint with Respondent Cahoon alleging that Mr. Treadwell had sexually assaulted Complainant.[2]

34.     After Respondent Cahoon contacted Mr. Treadwell regarding the complaint, Mr. Treadwell informed Respondent Cahoon that he would not speak with Respondent Cahoon unless he had legal counsel present.  Upon information and belief, Respondent Cahoon did not attempt any further communication or investigation with Mr. Treadwell.

35.     Upon information and belief, around this time, Mr. Treadwell's BLK account was deleted from the platform due to a complaint that he had violated BLK's policies.

---

[2]     A copy of the incident report ("Incident Report") created by Respondent Cahoon as a result of Complainant's allegations is attached hereto as **Exhibit A**.

9

As a result of his removal from the BLK platform, Mr. Treadwell lost access to his account and all messages exchanged between him and Complainant.[3]

36.     On April 14, 2023, Mr. Treadwell received a letter from Respondent Pierino ("charge letter") that notified him he was accused of allegedly violating Campus Policies and was charged with sexual assault, disruptive behavior, and non-consensual sexual contact under the Buffalo State Code of Conduct ("Code").[4]  The charge letter required Mr. Treadwell to appear for a hearing conducted by the Buffalo State Student Conduct Board ("Conduct Board").

37.     On May 5, 2023, Mr. Treadwell emailed Respondent Pierino requesting to reschedule his hearing and acquire any evidence related to his charges to prepare for his hearing.[5] In requesting all evidence that Buffalo State had collected for his case, Mr. Treadwell

---

[3]     Without access to the BLK messages, Mr. Treadwell was later unable to provide the Conduct Board with the additional messages and context to his conversation with Complainant prior to the March encounter.  Complainant selectively provided messages to Respondent Cahoon that were blatantly curated and conveniently supported her claims that she did not wish to have sex with Mr. Treadwell.  In his investigation, Respondent Cahoon never asked Complainant for the additional messages in the conversation, though markedly absent, including messages in which Complainant planned and arranged to meet Mr. Treadwell at his dorm.

[4]     A copy of the charge letter is attached hereto as **Exhibit B**.  A copy of Buffalo State's Code of Conduct, effective at the time of the relevant events detailed herein, is attached hereto as **Exhibit C**.

A copy of the Buffalo State Code of Student Rights, Freedoms, and Responsibilities and Sexual Violence Addendum ("Addendum") is attached hereto as **Exhibit D**.  This document also can be accessed at: https://deanofstudents.buffalostate.edu/sites/deanofstudents.buffalostate.edu/files/uploads/Code%20of%20Conduct%20Revisions--FINAL%20VERSION-Enough%20is%20Enough%20Law-Sept.%202015.pdf (last visited December 20, 2023). Notably, the Addendum provides: "Conduct proceedings are governed by the procedure set forth in the *Sexual Violence Addendum* as well as federal and New York State law, ***including the due process provisions of the United States and New York State Constitution*.**"  *See* Exhibit D, Section V (emphasis added).

[5]     A copy of the relevant email thread between Mr. Treadwell and Respondent Pierino, including the email dated May 5, 2023, is attached hereto as **Exhibit E**.

10

specifically requested evidence items mentioned in the Incident Report, including video footage of Complainant arriving and leaving the dorm, Complainant's supplied text messages, and the results of Complainant's sex offense evidence kit.[6]

38.    While Mr. Treadwell's request to reschedule his hearing was granted, Respondent Pierino failed to provide Mr. Treadwell with any evidence gathered in his case, including the specific items noted in the Incident Report.

39.    On September 5, 2023, Mr. Treadwell emailed Respondent Pierino to request another adjournment of his hearing and all evidence gathered in his case.[7]  Mr. Treadwell also requested information regarding the individual making the complaint against him and the individual reporting the complaint to Buffalo State.  In her response, Respondent Pierino denied Mr. Treadwell's adjournment request, but failed to acknowledge Mr. Treadwell's request for information regarding his case and did not provide any evidence to Mr. Treadwell at that time.[8]

40.    On September 6, 2023, Mr. Treadwell again requested that Respondent Pierino provide any evidence collected by Buffalo State's investigation and asked for her to advise whether the complainant and investigator regarding his charges was the same person.[9]

41.    Finally, after three separate requests by Mr. Treadwell, Respondent Pierino provided Mr. Treadwell with the information that would be included in the

---

[6]    Upon information and belief, the results of Complainant's sex offense evidence kit have never been provided to the Conduct Board nor to Mr. Treadwell.

[7]    A copy of the relevant email thread between Mr. Treadwell and Respondent Pierino, including the email dated September 5, 2023, is attached hereto as **Exhibit E**.

[8]    *See* Exhibit B.

[9]    A copy of the relevant email thread between Mr. Treadwell and Respondent Pierino, including the email dated September 6, 2023, is attached hereto as **Exhibit E**.

11

hearing packet for the Conduct Board to review.[10]  Additionally, Respondent Pierino informed

Mr. Treadwell that the complaint was being brought forth by Respondent Student Conduct and

Community Standards Office and that Respondent Cahoon would be called as "college

personnel" to the hearing.[11]  Notably, Respondent Pierino provided this information to

Mr. Treadwell a mere two business days before his hearing.

42.     Meanwhile, in a separate email thread on September 7, 2023,

Mr. Treadwell emailed Respondent Pierino, as required under the Code, to notify the Conduct

Board that Mr. Treadwell would be calling a witness at the hearing.[12]  Mr. Treadwell also

requested that Respondent Pierino inform him of any witnesses the Conduct Board intended to

call.

43.     On September 11, 2023—one day before Mr. Treadwell's hearing—

Respondent Pierino informed Mr. Treadwell that the Conduct Board would call college

personnel, University Police, and that the "reporting individual" had been notified about the

hearing.[13]

---

[10]     A copy of the hearing packet compiled for the Board to review is attached hereto as
**Exhibit F**.

[11]     *See* Exhibit E.

[12]     A copy of the relevant email thread between Mr. Treadwell and Respondent Pierino,
including the email dated September 7, 2023, is attached hereto as **Exhibit G**.

        Worth noting is that Respondent Cahoon did not make any effort during his investigation
to interview the witness called by Mr. Treadwell, even though this witness was present in the
dorm area during the March encounter.

[13]     *See* Exhibit G.

12

C. **The Hearing**.

44.     On September 12, 2023, Mr. Treadwell appeared before the Conduct Board for his scheduled hearing.

45.     Complainant *did not* appear despite receiving notice of the hearing.

46.     Complainant's absence deprived Mr. Treadwell of the fundamental right to confront his accuser and the failure to dismiss the charges against Mr. Treadwell and/or find him not responsible for them constituted grave procedural error by Respondents.

47.     As a result of Complainant's failure to appear at the hearing, Mr. Treadwell's testimony to the Conduct Board concerning the March encounter went uncontradicted.  For the Conduct Board to decide otherwise, in the complete absence of evidence or testimony to the contrary, is illogical and a grave procedural error—especially where the decision contains not one word assailing Mr. Treadwell's veracity as a witness.

48.     Additionally, Mr. Treadwell had identified a witness to the events in question, whom Respondent Cahoon failed to interview during his investigation into Complainant's report against Mr. Treadwell.  This also constituted another procedural error and violation of Respondent Buffalo State's policy that all students have the right to have complaints against them investigated in a "thorough manner."

49.     Despite Mr. Treadwell's multiple requests to review the entirety of Respondent Buffalo State's evidence gathered in the investigation, Mr. Treadwell was not afforded the opportunity to review all available evidence.

50.     Absent from the evidence provided to Mr. Treadwell by Respondent Pierino was the surveillance footage of Complainant on campus.

51.     This surveillance footage was viewed by the Conduct Board at the hearing.  This was the first time Mr. Treadwell and his advisor saw it despite numerous requests before the hearing that it be produced.  Mr. Treadwell objected to the Conduct Board's review and consideration of the footage, but his objection was overlooked, not ruled on, and effectively denied.

52.     Mr. Treadwell properly objected to the surveillance footage as it was not provided to him prior to the hearing as is required by Buffalo State policies.  The Conduct Board acknowledged Mr. Treadwell's objection, taking it "under advisement," but chose to review the footage anyway.  The failure to disclose this evidence to Mr. Treadwell prior to the hearing yet allow its use as evidence to find him responsible on two charges was yet another procedural error committed by Respondent Conduct Board.

53.     On September 13, 2023, Respondent Pierino notified Mr. Treadwell of the Conduct Board's decision ("decision letter").[14]  The Conduct Board found Mr. Treadwell *not responsible* for sexual assault but found him *responsible* for disruptive behavior and non-consensual sexual contact.[15]

54.     In its justification for its decision, the Conduct Board recognized that Mr. Treadwell informed it "that the messages provided by the reporting individual were not representative of their full conversations on the BLK app."  The Conduct Board then stated, "Without testimony from the Reporting Individual and the entirety of the messages that occurred

---

[14]     A copy of the Board's decision letter, dated September 13, 2023, is attached hereto as **Exhibit H**.

[15]     Under the Code, the charges of sexual assault and non-consensual sexual contact both require a showing of a lack of consent.  Inexplicably, the Board reasoned that it could not find Mr. Treadwell responsible for sexual assault without Complainant's testimony but reasoned that it could find him responsible for non-consensual sexual contact.  *See* Exhibit H.

14

between the R.I. and Z. Treadwell, the board could not find Z. Treadwell responsible for 3e: Sexual Assault." However, in the next sentence, the Conduct Board *chose* not to credit Mr. Treadwell's *uncontradicted* testimony that he received affirmative consent—despite its own admission and recognition that Complainant did not testify otherwise.

55.     In making its decision, the Conduct Board went beyond the testimony offered before it to substitute its own opinion and judgment as a replacement to the evidence on the record. In doing so, the Board's actions were entirely one-sided and biased, demonstrating an effort to discredit Mr. Treadwell's testimony—even though his testimony was entirely uncontradicted and supported by witness testimony, whereas Complainant did not attend the hearing to provide testimony despite receiving notice. As such, Mr. Treadwell was not afforded the opportunity to confront his accuser—in blatant and troubling violation of the requirements of American Due Process—yet the crux of the accuser's complaints against him was credited.

56.     By Respondents Buffalo State and Conduct Board, Mr. Treadwell was deprived of his right to a fair trial. Here, fully enabled by Buffalo State policies and procedures, the accused individual is not able to confront his accuser—but instead is provided the illusion of cross-examination in the form of confronting the straw-man complainant, who is an investigator employed by Buffalo State. The straw man's testimony was entirely hearsay. Here, the straw man was not present at the alleged incident and does not have any inside knowledge to the event in question, so effective cross examination is impossible.[16]

---

[16]    Respondent Buffalo State also has a policy against allowing written statements of a non-appearing witness to be considered but allowed the straw man to read Complainant's accusations in violation of that policy. The maker of the hearsay statement, of course, could not be cross examined.

57. Using this procedure, Respondent Buffalo State can get around the requirement that the defendant must have the right to confront his accuser by making the accuser an employee of the college and offering *that person* as the complainant. There is nothing to stop Respondent Buffalo State from calling in **any** Campus member to stand in for a complainant in order to creatively deprive an accused individual of due process while pretending to comply with, but merely providing the illusion of due process. Due process is a fundamental right in American society and Mr. Treadwell has been deprived of that right by Respondent's Conduct Board and Buffalo State.

**D. The Appeal.**

58. On September 16, 2023, Mr. Treadwell submitted a letter requesting an appeal of the Board's decision to the Buffalo State Student Conduct Appeals Board ("Appeals Board") of Respondent Student Conduct and Community Standards Office.[17]

59. On October 2, 2023, the Appeals Board denied Mr. Treadwell's appeal request.[18]

60. Under the Code, the Appeals Board's denial constitutes a final decision regarding Mr. Treadwell's charges, so all administrative remedies and preconditions to this proceeding have been satisfied.[19]

---

[17] A copy of Mr. Treadwell's appeal letter, dated September 16, 2023, is attached hereto as **Exhibit I**.

[18] A copy of the Appeals Board's denial letter, dated October 2, 2023, is attached hereto as **Exhibit J**.

[19] In preparation for this proceeding, Petitioner requested a copy of the September 12, 2023 hearing transcript as afforded to him under Respondent Buffalo State's Code of Conduct. To date, Respondents have not provided Petitioner with a copy of the transcript. A copy of the

16

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**The Conduct Board's Finding of Responsibility Was Affected by
Error of Law, Arbitrary and Capricious, an Abuse of Discretion,
and Not Supported by Substantial Evidence
Against Respondent Conduct Board**

61.     Petitioner repeats, realleges and incorporates each paragraph hereinbefore

mentioned.

62.     Respondent Conduct Board's actions, including proceeding with the

hearing despite the absence of the Complainant and disregarding Petitioner's uncontradicted

testimony, failing to provide Petitioner with the totality of evidence against him, considering

evidence not provided to Petitioner in advance of his hearing, and substituting its own judgment

for evidence on the record was affected by error of law, arbitrary and capricious, an abuse of

discretion, and not supported by substantial evidence.

63.     Complainant did not appear at the hearing despite receiving notice of the

same.  As a result, Mr. Treadwell's testimony went on the record uncontradicted.  Nevertheless,

the Board credited hearsay statements read to the Board by Respondent Cahoon in the absence of

Complainant at the hearing.  Furthermore, Respondent Conduct Board deprived Mr. Treadwell

the right to confront his accuser.

64.     The Conduct Board's finding of responsibility is neither reasonable nor

supported and therefore constitute arbitrary and illegal action and must be annulled.

---

email thread with Respondent Pierino and Respondent Buffalo State's counsel requesting the
hearing transcript is attached here as **Exhibit K**.  The hearing transcript should be part of the
record underlying Respondents' decision-making process.  Petitioner reserves all rights he has
with respect to its inclusion.

17

## SECOND CAUSE OF ACTION

### Violation of the Fourteenth Amendment
### Procedural Due Process Violation under 42 U.S.C. § 1983
### <u>Against All Respondents</u>

65.     Petitioner repeats, realleges and incorporates each paragraph hereinbefore mentioned.

66.     Under the Fourteenth Amendment to the United States Constitution, no government official shall "deprive any person of life, liberty, or property, without due process of law."

67.     In addition to protecting certain unenumerated rights, the Due Process Clause of the Fourteenth Amendment also has a procedural aspect which guarantees an individual's right to fair procedures before depriving a person of "life, liberty, or property."

68.     Respondents' actions, including proceeding with the hearing despite the absence of the Complainant and disregarding Petitioner's uncontradicted testimony, failing to provide Petitioner with the totality of evidence against him, failing to conduct a thorough investigation of the allegations, and substituting the Conduct Board's logic and reasoning for evidence on the record deprived Petitioner of a meaningful opportunity to be heard regarding Complainant's allegations against him, deprived Petitioner of his right to confront his accuser, and deprived him of his right to a fair hearing.

69.     Respondents' actions in depriving Petitioner of a meaningful opportunity to be heard and right to a fair trial which thereby denied Petitioner's right to procedural due process of law.

70.     In committing these acts, Respondents deprived Petitioner of a meaningful opportunity to be heard in violation of Petitioners' due process rights.  *See, e.g., Matthews v.*

18

*Eldridge*, 424 U.S. 319, 333 (1976) (holding that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner"); *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971) (stating that a pre-deprivation hearing generally is required to satisfy procedural due process requirements); *Spinelli v. City of New York*, 579 F.3d 160, 169 (2d Cir. 2009) (the "touchstone" of procedural due process is "the requirement that a person in jeopardy of serious loss [be given]" an "opportunity" to respond to "the case against him") (alterations in original) (quoting *Mathews*, 424 U.S. at 348-49).

71.     Respondents' conduct was committed under the color of law.

72.     As a direct and proximate result of the foregoing, Respondents' conduct damaged Petitioner, who is also statutorily entitled to, and will seek, attorney's fees under 42 U.S.C. § 1988.

### THIRD CAUSE OF ACTION

### Violation of the Fourteenth Amendment
### Substantive Due Process Violation under 42 U.S.C. § 1983
### Against All Respondents

73.     Petitioner repeats, realleges and incorporates each paragraph hereinbefore mentioned.

74.     Under the Fourteenth Amendment to the United States Constitution, no state shall "deprive any person of life, liberty, or property, without due process of law."

75.     In addition to guaranteeing certain procedural protections, the Due Process Clause of the Fourteenth Amendment guarantees certain substantive protections, including the right to life and liberty.

76.     Respondents acted arbitrarily, oppressively, and in a conscience-shocking manner in authorizing, encouraging, and condoning the violations of Petitioner's constitutional

19

rights in their arbitrary and capricious decision finding Petitioner responsible for Code

violations.

77.    Respondents' actions, including denying Petitioner the right to confront

his accuser, failing to provide Petitioner, before the hearing, with all evidence gathered against

him, and thereby depriving Petitioners of a meaningful opportunity to meet and challenge the

evidence used find Petitioner responsible, and making findings against evidence on the record

deprived Petitioner of a meaningful opportunity to be heard regarding his charges under the

Code.

78.    Respondents' actions were committed with conscious disregard for the

rules and procedures in place to protect the due process rights of Petitioner, thereby intentionally

depriving Petitioner of their constitutional rights without a meaningful opportunity to be heard.

79.    Petitioner's substantive due process rights were violated under the

Fourteenth Amendment of the Constitution of the United States, as Petitioner has suffered a loss

of constitutional rights due to the illegal acts of Respondents.

80.    Respondents' conduct involved reckless or deliberate and callous

indifference to Petitioner's constitutional rights.

81.    Respondents intentionally or recklessly failed to provide Petitioner with a

meaningful opportunity to be heard before deliberating, considering, and ultimately finding

Petitioner responsible for charges under the Code that resulted in Petitioner being deprived of

good will and reputation.

82.    Respondents' actions deprived Petitioner of their substantive due process

rights guaranteed by the Fourteenth Amendment. *See, e.g., Cine SK8, Inc. v. Town of Henrietta*,

507 F.3d 778, 784 (2d Cir. 2007) (holding that the defendants infringed on the plaintiff's

20

property rights in violation of the plaintiff's substantive due process rights were the defendant infringed on the property right "in an arbitrary or irrational manner"); *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999) (holding that governmental conduct may be considered "arbitrary or irrational" where the process used by the government to infringe on the property right was marked by a "fundamental procedural irregularity").

83.     Respondents' actions were committed under the color of law.

84.     Respondents' conduct damaged Petitioner, who is also statutorily entitled to, and will seek, attorney's fees under 42 U.S.C. § 1988.

## FOURTH CAUSE OF ACTION

### Violation of the Fourteenth Amendment
### Violation of the Equal Protection Clause under 42 U.S.C. § 1983
### <u>Against All Respondents</u>

85.     Petitioner repeats, realleges and incorporates each paragraph hereinbefore mentioned.

86.     The Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

87.     The allegations described above demonstrate that Petitioner appears to have been singled out and treated very differently from Complainant.

88.     Respondents violated Petitioner's well-established rights under the Equal Protection Clause of the Fourteenth Amendment in that they deprived and/or seriously intruded on Plaintiffs' constitutional rights, without due process of law, as well as denying him equal protection of the law in failing to properly investigate the allegations against him, failing to provide Petitioner with the right to confront his accuser, and failing to provide Petitioner with the

21

totality of evidence against him, while accepting Complainant's allegations despite her absence at the hearing.

89.     Through these actions, Respondents collectively deprived Petitioner of the rights secured to him by the Fourteenth Amendment to the Constitution of the United States.

90.     As a direct and proximate result of the foregoing, Petitioner was damaged and injured in an amount to be determined at trial.

91.     The conduct by Respondents was willful, malicious, oppressive, and reckless, and it was of such a nature that Petitioner claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged.

### FIFTH CAUSE OF ACTION

**Violation of the Fourteenth Amendment
Policy, Custom, and Practice of Respondents and
Failure to Supervise and Train under 42 U.S.C. § 1983
<u>Against Respondents Buffalo State and Conduct Board</u>**

92.     Petitioner repeats, realleges and incorporates each paragraph hereinbefore mentioned.

93.     Respondents Buffalo State and Conduct Board developed and maintained policies, customs, and practices exhibiting deliberate indifference to the Petitioner's constitutional rights.

94.     At all relevant times, Respondents Buffalo State and Conduct Board were aware that Respondents Pierino, Cahoon, and Does were inadequately trained regarding to students' substantive and procedural due process rights under the Fifth and Fourteenth Amendments, yet Respondents Buffalo State and Conduct Board maintained a policy or custom

of failing to provide Respondents Pierino, Cahoon, and Does training on the Fifth and Fourteenth

Amendments or adequate supervision over them.

94. 95.    It was the policy or custom, or both, of Respondents Buffalo State and

Conduct Board to inadequately supervise and train its employees and agents, including

Respondents Pierino, Cahoon, and Does, so they thereby failed to prevent the constitutional

violations against Petitioner.

96.    Upon information and belief, Respondents Buffalo State and Conduct

Board maintained a policy, custom, or practice of interfering with Petitioner's constitutional

rights caused by Respondents actions in investigating and adjudicating charges brought against

him.

97.    As a direct and proximate result of the foregoing, Petitioner was damaged

and injured in an amount to be determined at trial.

98.    The conduct by Respondents was willful, malicious, oppressive, and

reckless, and it was of such a nature that the Plaintiffs claim punitive damages against each of

them in an amount commensurate with the wrongful acts alleged here.


### SIXTH CAUSE OF ACTION

**Violation of the Fifth, Sixth, and Fourteenth Amendments**
**Denial of Right to a Fair Trial under 42 U.S.C. § 1983**
**Against All Respondents**

99.    Petitioner repeats, realleges and incorporates each paragraph hereinbefore

mentioned.

100.    As explained above, Petitioner was deprived of his basic right to a fair

institution of criminal proceedings, deprivation of the due process right to justice and fair dealing

in the institution and continuation of criminal proceedings, deprivation of the right to an

23

indictment founded upon proper and adequate evidence, deprivation of the due process right to be shielded from police and prosecutorial excesses and misconduct in violation of the law, and deprivation of the due process right to a fair trial in violation of Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments.

101.    Respondents knew and had ample reason and opportunity to investigate the evidence proffered against Petitioner, which was used to charge and find Petitioner responsible of violations under the Code.

102.    Nevertheless, Respondents engaged in a course of conduct consisting of corrupt practices, official misconduct, hearsay, and inadequate evidence used by the Respondents as evidence to support the charges they lodged and pursued against Petitioner.

103.    As a direct and proximate result of the foregoing, Petitioner was damaged and injured in an amount to be determined at trial.

104.    The aforesaid conduct by the Respondents was willful, malicious, oppressive, and/or reckless and was of such a nature that Petitioner claims punitive damages against each of them in an amount commensurate with the wrongful acts alleged herein.

## **DEMAND FOR JURY TRIAL**

105.    Petitioner demands trial by jury in this action of all issues so triable.

24

## PRAYER FOR RELIEF

Petitioner, Zion Treadwell, prays for relief and demands judgment as follows:

1.      That Petitioner be awarded compensatory damages against Respondents in an amount to be determined at trial;

2.      That Petitioner be awarded punitive damages against Respondents in an amount to be determined at trial;

3.      That this Court, pursuant to 42 U.S.C. § 1988, issue an order awarding Petitioner reasonable attorneys' fees, together with the costs of this action against Respondents; and

4.      That this Court award such other further relief, together with any other legal or equitable relief, or both, as the Court deems just and proper.

Dated:      January 30, 2024
            Buffalo, New York

RUPP PFALZGRAF LLC
*Attorneys for Petitioner, Zion Treadwell*

By:      _____
            R. Anthony Rupp III, Esq.
            1600 Liberty Building
            Buffalo, New York  14202
            Phone: (716) 854-3400
            rupp@rupppfalzgraf.com

25

## VERIFICATION

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF ERIE         )

      **Zion Treadwell**, being duly sworn, deposes and says that he is the Petitioner-

Plaintiff named in the above-titled action; that he has read the foregoing, and knows the contents

thereof; and that the same is true to his own knowledge, except as to those matters therein stated

to be alleged upon information and belief, and as to those matters he believes them to be true.


_____
Zion Treadwell

-1-

# EXHIBIT A

FILED: ERIE COUNTY CLERK 01/30/2024 06:13 PM
NYSCEF DOC. NO. 3
INDEX NO. 801516/2024
RECEIVED NYSCEF: 01/30/2024
Case 1:24-cv-00150   Document 1-2   Filed 02/15/24   Page 32 of 132
5/5/23, 9:20 AM

# Report For Incident 202300286

## Main Information

| Incident Date | Incident Time | Referral Date | Incident Manager(s) |
|---|---|---|---|
| 3/4/2023 | 6:49 PM | 3/15/2023 | Nina Pierino |

| Referred By | Witness(es) | Victim(s) | |
|---|---|---|---|
| Steven Cahoon | N/A | Arianna Newell ( Other ) | |

| Zone | Location | Room | Specific Location |
|---|---|---|---|
| Moore Complex | Moore D4 | No Room | D416 |

### Narrative(s)

On March 4th, 2023, the listed victim was texted by the listed respondent seeking her to come to his dorm. Victim previously and that night stated she was not interested in coming over for sex, as they had a prior one-night encounter in October. Respondent stated he wasn't seeking sex and victim agreed to take an Uber to Buffalo State. Respondent reimbursed the victim the cost of the ride share via Cash App. Victim arrived around 6:49 PM and respondent threw his dorm keys out the 4th floor window of Moore Complex and told her how to enter and where to go. When the victim arrived at D416, the respondent was waiting for the victim. The two went to the respondent's bedroom. After a couple minutes, the victim received a text from a friend about a dress and while the victim looked at the text, the respondent came up from behind the victim, who was seated, stood her up and bent her over. Respondent removed victim's pants and underwear and inserted his penis into her vagina without consent. The victim described the assault as lasting for approximately 3 minutes, when she believes he ejaculated inside of her without the use of protection. The respondent then picked up the victim's purse and tossed it to her and said "you can go now." Victim then left the suite and went outside to catch an Uber home.

Victim was able to supply a phone number and the nickname of the respondent, which I confirmed through THD. Video footage shows the victim arriving and picking up the dorm keys that were tossed out of the window, as well as the victim leaving and getting into another Uber approximately 20 minutes later. Victim supplied text messages to show she was not interested in having a sexual encounter with the respondent.

Victim was transported to the hospital for a sex offense evidence kit. Inv. Cahoon emailed the respondent on 3/9 and the email was not returned. Inv. Cahoon went to Moore D416 on 3/13 and the respondent was not home. A business card was left for the respondent to call. Respondent called Inv. Cahoon and advised that he would not speak without legal representation.

Case is under review with the District Attorney's office at this time.

## Respondents

| Name | Respondent ID | DOB | Type |
|---|---|---|---|
| Zion Treadwell | B00817235 | 9/10/2001 | Student |



| Is Arrested? | Address |
|---|---|
| No | Moore Complex D422, Buffalo, NY 14222 |

### ALLEDGED Conduct Violation(s)

2023 : 03.e.Sexual Assault:Finding (N/A) - Response (N/A)
2023 : 04.e.Disruptive Behavior:Finding (N/A) - Response (N/A)
2023 : 03.a.Non-consensual sexual contact:Finding (N/A) - Response (N/A)

Powered By Pave Systems Inc. Copyright 2023. All Rights Reserved.

# EXHIBIT B


# BUFFALO STATE
The State University of New York

**Student Conduct and
Community Standards Office**
Bengel Hall Room 14
1300 Elmwood Avenue
Buffalo, NY  14222-1095
Tel: (716) 878-3051
Fax: (716) 878-3821

April 14, 2023

Zion Treadwell
Moore Complex D422, Buffalo, NY
SUNY Buffalo State

**202300286**

Dear Zion Treadwell,

This letter is to inform you that I have received a report from a Campus Official that you were allegedly involved in an incident of inappropriate behavior.  Specifically, this report, says you were involved in an incident which took place at 06:49 PM on March 04, 2023 in Moore D4 and states that you were allegedly violating Campus Policies.

Based upon the information stated in this report, you are being charged with having ==allegedly== violated the following rule(s):

**03.e Sexual Assault:** Unwelcome penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim.

**04.e Disruptive Behavior:** Impairing, interfering with, or obstructing the orderly conduct, processes and functions of the College or surrounding community. Behavior that may be representing a nuisance or danger to persons (including oneself) or property.

**03.a Non-consensual sexual contact:** Any intentional sexual touching without consent and/or by force.

As a result of a complaint, a hearing will take place on **April 25, 2023 at 12:15 PM , in Bulger 425.**  Please promptly report to **Bulger 425** and be seated.  **If you do not appear at the hearing, the case will be heard in your absence**, **and may result in a finding of responsibility and the imposition of sanctions.**
You also have the ==***right to meet with an adviser and have one assigned if you so desire***==.  Please use the link to request an adviser. You are allowed to bring witnesses to the hearing to appear before the board as well as an adviser  if you so choose.  Names of witnesses and/or advisers must be submitted in writing prior to the hearing.  As a student, you are provided with the opportunity to share introductory remarks at the hearing, you are encouraged to prepare a written statement that can be shared with the board.   Additionally, if you would like to speak with someone about this process, please contact the Student Conduct and Community Standards Office prior to the date of your scheduled hearing.

**You are encouraged to access resources on the Student Conduct and Community Standards website prior to your upcoming hearing.  Please click on the links for direct access:**
**Student Conduct Process**
**Hearing Preparation Guide**
**Conduct Board Adviser Information/Request an Adviser**
Student Accessibility Services or SAS ensures that Buffalo State students with disabilities receive the academic accommodations and services they are legally entitled to. Additionally, SAS is dedicated to making sure that all aspects of college life are accessible to students with disabilities, and providing training and education to the campus community. Please copy and paste the link and complete the form to indicate the type of accommodations and/or services that you need.  If you are not already registered with the SAS Office, please register with the office by following the steps listed on their website http://sas.buffalostate.edu/students.

Additional information regarding the conduct system, which may be helpful to you, is available at studentconduct.buffalostate.edu.  Please refer to it prior to your hearing.

Sincerely,

Nina Pierino
Associate Director
pieringg@buffalostate.edu
(716) 878-4841

# EXHIBIT C

Code of Conduct- Approved by the University Council, 09.21.2021

## SECTION 1: INTRODUCTION

Buffalo State University policies and procedures are designed to guide student conduct and to ensure fair processes for all students. The Code of Conduct is published by the Division of Student Affairs to define student rights, freedoms, and responsibilities it defines student conduct; it provides due process and delineates sanctions when responsibility has been determined. These policies follow and articulate student rights and responsibilities. Students are expected to know the contents of this document. This document recognizes that students have rights, freedoms, and responsibilities both as citizens and as members of the university community. It is meant to be operable within the provisions of the Constitution of the United States; federal, state, and local laws; and the policies of the Board of Trustees of the State University of New York. Behaviors that are detrimental to the university environment and/or damaging to the reputation of the university (whether occurring on or off university property) will not be tolerated. Students who are found to be repeat offenders will be subject to increasing sanctions, with the possibility of suspension or dismissal from the university. Student conduct procedures and subsequent disciplinary outcomes are designed to find a balance between the interests of the individual student and the community.

## SECTION 1.A: STUDENT BILL OF RIGHTS

1. **Freedom of Government**

Students have the right to organize and maintain democratic self-government in accordance with State University of New York and Buffalo State University policies and procedures.

2. **Academic Freedom and Responsibilities**

Students have the right to be informed of and are responsible for maintaining the standard of academic performance expected of them in each class and/or program in which they are enrolled. Students have the right to take reasoned exception with the data or views offered in any course of study and to hold differing opinions without fear of prejudiced or capricious academic evaluation.

3. **Freedom of Expression and Inquiry**

Subject to reasonable limitations imposed under State University of New York or Buffalo State University policies and procedures, students and registered student organizations have the right to meet, engage in discussion, pass resolutions, distribute fliers, circulate petitions, invite speakers, and take other action by orderly means that does not disrupt the operation of the university.

4. **Freedom of Communication Media**

Student communication organizations are to be free of censorship and advance approval of copy. Student editors and managers are free to develop editorial policies and news coverage in accordance with generally accepted standards of responsible journalism. Such public expressions are to be taken only as the work and opinions of their author(s).

5. **Freedom of Association**

Students are free to organize and join associations for educational, political, social, religious, or cultural purposes, as consistent with law.

6. **Freedom from Disciplinary Action without Due Process**

Updated January 2023

Code of Conduct- Approved by the University Council, 09.21.2021

No sanction or other disciplinary action shall be imposed on a student by, or in the name of, the university without due process. The Code of Conduct defines due process at the university.

### 7. Freedom from Improper Disclosure

Information about student views, beliefs, and political associations that faculty and university staff may acquire in the course of their duties at the university are to be considered confidential. Judgments of ability and character may be expressed in appropriate circumstances (e.g., letters of recommendation).

### 8. Right to Privacy

Students are protected from invasion of privacy and searches of their residences, except where law enforcement has probable cause, a court-ordered search warrant has been legally obtained, or where permitted by the campus residence hall license. Nothing herein shall limit the university's ability to engage in reasonable inspections to ensure the health and safety of persons and facilities.

### 9. Freedom from Prejudice and Discrimination

Students have a right to be free from prejudice and discrimination based on race, color, national origin, religion, creed, age, disability, sex, gender identity, sexual orientation, familial status, pregnancy, predisposing genetic characteristics, military status, domestic violence victim status, or criminal conviction.

### 10. Right to Be Informed

The university has the obligation to inform all students, within a reasonable time, of their rights, freedoms, and responsibilities. Additionally, the university has the obligation to provide both complainants and those accused of violations, within a reasonable time, information outlining the alleged violation, student conduct process, possible sanctions, and student advocacy rights.

### 11. Rights under Title IX

The State University of New York and Buffalo State University are committed to providing options, support, and assistance to victims of sexual assault, domestic violence, dating violence, and/or stalking to ensure that they can continue to participate in Buffalo State and SUNY-wide programs, activities, and employment. All victims of these crimes and violations have the rights listed below, regardless of whether the crime or violation occurs on campus or off campus:

    a. Make a report to local law enforcement and/or state police.
    b. Have disclosures of domestic violence, dating violence, stalking, and sexual assault treated seriously.
    c. Make a decision about whether or not to disclose a crime or violation and participate in the conduct process and/or criminal justice process free of pressure from the institution.
    d. Participate in a process that is fair and impartial and provides adequate notice and a meaningful opportunity to be heard.
    e. Be treated with dignity and to receive from the institution courteous, fair, and respectful health care and counseling services, where available.
    f. Be free from any suggestion that the reporting individual is at fault when these crimes and violations are committed or should have acted in a different manner to avoid such crimes or violations.

Updated January 2023

Code of Conduct- Approved by the University Council, 09.21.2021

    g.  Describe the incident to as few institutional representatives as practicable and not to be required to unnecessarily repeat a description of the incident.

    h.  Be free from retaliation by the institution, the accused and/or the respondent(s), and/or their friends, family, and acquaintances within the jurisdiction of the university.

    i.  Be accompanied by a student conduct adviser of choice who may assist and advise a reporting individual, accused, or respondent throughout the conduct process including during all meetings and hearings related to such process.

    j.  Exercise civil rights and practice of religion without interference by the investigative, criminal justice, or conduct process of the university.

## SECTION 1.B: JURISDICTION OF THE CODE OF CONDUCT

The Code of Conduct shall apply to conduct that occurs on university premises and at university-sponsored programs and activities, and to off-campus conduct that adversely affects the university community, the pursuit of its objectives, or neighboring communities. A student may be charged with violating local, state, and federal laws and also the Code of Conduct.

## SECTION 1.C: INHERENT AUTHORITY FOR THE STUDENT CONDUCT PROCESS

Section 356g of the Education Law empowers the University Council of each state-operated campus of the State University of New York to make regulations governing the conduct of students. All programs for student welfare and conduct are entrusted to and administered by the president of Buffalo State University on behalf of the University Council.

The president has delegated administration, enforcement, and modification of programs and policies for student conduct to the vice president for student affairs. In addition to the Code of Conduct, the rules, regulations, and procedures for the Maintenance of Public Order on campuses of the State University of New York, adopted by the Board of Trustees, are in effect at Buffalo State University.

## SECTION 2: DEFINITIONS

The following terms, when used with reference to the Code of Conduct, are defined as follows:

    **A.**  **Accused** shall mean a person accused of a violation who has not yet entered the university's conduct process.

    **B.**  **Affirmative consent** is a knowing, voluntary, and mutual decision among all participants to engage in sexual activity. Consent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity. Silence or lack of resistance, in and of itself, does not demonstrate consent. The definition of consent does not vary based on a participant's sex, sexual orientation, gender identity, or gender expression. Consent to any sexual act or prior consensual sexual activity between or with any party does not necessarily constitute consent to any other sexual act. Consent is required regardless of whether the person initiating the act is under the influence of drugs and/or alcohol. Consent may be initially given but withdrawn at any time. Consent cannot be given when a person is incapacitated, which occurs when an individual lacks the ability to knowingly choose to participate in sexual activity. Incapacitation may be caused by the lack of consciousness or being asleep, by being involuntarily restrained, or if an individual otherwise cannot consent. Depending on the degree of intoxication, someone who is under the influence of alcohol, drugs, or other intoxicants may

Updated January 2023

Code of Conduct- Approved by the University Council, 09.21.2021

*[handwritten: no incapacity, no evidence on record to suggest coercion, force, threat]*

be incapacitated and therefore unable to consent. ==Consent cannot be given when it is the result of any coercion, intimidation, force, or threat of harm.== When consent is withdrawn or can no longer be given, sexual activity must stop. In New York State, the age of consent is 17. Consent cannot be given if any of the parties are under the age of 17 or otherwise cannot consent.

C.  **Appeals Review Board** means any person or persons authorized by the vice president for student affairs to consider an appeal.

D.  **Bystander** shall mean a person who observes a crime, impending crime, conflict, potentially violent or violent behavior, or conduct that is in violation of rules or policies of the university.

E.  **Code of Conduct** shall mean the written policies adopted by the university governing student behavior, rights, and responsibilities.

F.  **University** refers to Buffalo State University.

G.  **University document** refers to any university record, official communication, or form.

H.  **University employee** is any staff member, faculty member, university official, or other person employed by or contracted with the university. In an instance where a person holds multiple campus roles, his or her particular situation shall be determined by the vice president for student affairs.

I.  **University property** refers to all property owned, leased, or on loan to the university and/or to university organizations or affiliates.

J.  **Complainant** is any member of the university community or visitor to the campus who initiates and/or later presents such a complaint against a student to a designated university official. A university official may serve as a complainant on behalf of others in enforcing the terms of this Code of Conduct.

K.  **Confidentiality** may be offered by an individual who is not required by law to report known incidents of sexual assault or other crimes to the university or law enforcement officials, in a manner consistent with state and federal law, including but not limited to 20 U.S.C. 1092(f) and 20 U.S.C. 1681(a). Licensed mental health counselors, medical providers, and pastoral counselors are examples of institutional employees who may offer confidentiality.

L.  **Guest** is defined as non-student person(s) not otherwise associated with the university community as defined in the Code of Conduct.

M.  **Personal property** refers to anything of value to which a person has possession or title.

N.  **Policy** is defined as the written rules of SUNY or the university that prescribe the behavior of individuals, groups, or the institution.

O.  **Privacy** may be offered by an individual when such individual is unable to offer confidentiality under the law but shall still not disclose information learned from a reporting individual or bystander to a crime or incident more than necessary to comply with this and other applicable laws, including informing appropriate university officials.

P.  **Proceedings** refer to the activities related to a university conduct complaint, including but not limited to fact-finding investigations, conduct meetings, hearings, and appeals.

Q.  **Reasonable person** refers to a hypothetical person who exercises average care, skill, and judgment in conduct and who serves as a comparative standard.

R.  **Reporting individual** shall encompass the terms victim, survivor, complainant, claimant, witness with victim status, and any other term used to reference an individual who brings forth a report of a violation.

Code of Conduct- Approved by the University Council, 09.21.2021

S. **Respondent** shall mean a person accused of a university violation who has entered the university's conduct process.

T. **Results** means any initial, interim, or final decision by any university official or entity authorized to resolve conduct matters within the institution.

U. **Sexual activity** shall have the same meaning as "sexual act" and "sexual contact" as provided in 18 U.S.C. 2246(2) and 18 U.S.C. 2246(3). "Domestic violence," "dating violence," "stalking, and "sexual assault" shall be defined by each institution in its Code of Conduct in a manner consistent with applicable federal definitions.

V. **Sexual assault** is defined to be a Code of Conduct violation consistent with the federal definition of rape adopted by the Department of Education: "The penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim." (See 34 C.F.R. Pt. 688, Subpt. D. App. A.)

W. **Student** is defined as persons registered for courses, either full time or part time, pursuing undergraduate, graduate, or professional studies, as well as non-degree-seeking individuals; those who confirm their intent to enroll in programs; those attending orientation sessions, between academic terms, taking online classes, auditing classes, or residing in the residence halls; those who were enrolled on the date of an alleged incident; and persons who are active but not enrolled at the university.

X. **Student Conduct Board** is a group of individuals authorized and trained by the Student Conduct and Community Standards Office to hear referrals.

Y. **Student conduct body** refers to the group of authorized persons who administers student conduct proceedings.

Z. **Student conduct official(s)** means the person or persons designated by the vice president for student affairs to administer the Code of Conduct.

AA. **Student organization** means a group or association of students with a specific purpose that has complied with the formal requirements for registration with the university, which is further defined in the Student Organization Affiliation Policy: http://deanofstudents.buffalostate.edu/handbook-student-policies#soa

## SECTION 3: CONDUCT POLICIES

While on university property or while attending university-sponsored activities on or off campus where a definite, legitimate, and substantial university interest exists, no student, either singly or in concert with others, shall violate any of the policies below.

1. **Respect for Others**
   a. **Obstruction** - Obstructing the free movement of persons and university-owned and/or operated vehicles on the university property.
   b. **Bias-related incident** - Intentionally selecting a person against whom a criminal offense is committed or intended to be committed because of a belief or perception regarding the race, color, national origin, ancestry, gender, religion, religious practice, age, disability, or sexual orientation, regardless of whether the belief or perception is correct.

2. **Abuse**

Updated January 2023

Code of Conduct- Approved by the University Council, 09.21.2021

a. **Physical abuse** - Intentionally causing physical injury to self or others or taking any action upon any person with such reckless disregard that bodily harm might result.

b. **Harassment** - Engaging in any repetitive behavior that is threatening or intimidating to another person or that is disturbing to another person and has no legitimate purpose.

c. **Stalking** - Demonstrating unwanted or obsessive attention to an individual or group in person or by electronic means. By its nature, stalking is not a one-time event. It is behavior that could cause a person to suffer substantial acts that alarm, cause fear, or seriously annoy such other person(s) and that serve no legitimate purpose.

d. **Hazing** - Engaging in activity that may include but is not limited to paddling or other physical abuse or brutality; consumption of alcohol or drugs; activities that involve illegal acts of excessive fatigue and/or stress; or verbal and/or psychological abuse that compromises the dignity of individuals. Hazing is any reckless or intentional conduct in connection with the initiation into, or affiliation with, any organization that degrades, humiliates, or endangers the mental or physical health of any person, regardless of the person's willingness to participate. It can also include activities that damage, destroy, or remove any public or private property.

e. **Unlawful imprisonment** - Physically restraining or detaining any person or removing such person from any place where they are authorized to remain.

3. **Sexual Misconduct**

a. **Non-consensual sexual contact** - Any intentional sexual touching without consent and/or by force.

b. **Domestic Violence (Dating Violence)-** Any pattern of coercive tactics which can include physical, psychological, sexual, economic, and emotional abuse perpetuated by one person against an adult intimate partner, with the goal of establishing and maintaining power and control over the victim.

c. **Retaliation** - Adverse action against another person for reporting a violation or for participating in any way in the investigation or conduct process. Retaliation includes harassment and intimidation, including but not limited to violence; threats of violence; property destruction; adverse social, educational, or employment consequences; and bullying.

d. **Sexual exploitation** - Taking non-consensual or abusive sexual advantage of another for one's own advantage or benefit, or to benefit or advantage anyone other than the one being exploited, and that behavior does not otherwise constitute one of the other sexual misconduct offenses.

e. **Sexual assault -** Unwelcome penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim.

f. **Sexual harassment** - Unwelcome, verbal, non-verbal, or physical conduct that is sexual in nature and sufficiently severe, persistent, or pervasive that it unreasonably interferes with, denies, or limits someone's ability to participate in or benefit from the university's educational program and/or activities, and is based on power differentials, the creation of a hostile environment, or retaliation.

Code of Conduct- Approved by the University Council, 09.21.2021

      **g.** **Sexual violence** - Physical sexual acts perpetrated against a person's will or perpetrated when a person is incapable of giving consent. A number of different acts fall into the category of sexual violence, including rape, sexual assault, sexual battery, sexual abuse, and sexual coercion.

**4. Community Behavior**

      **a.** **Disturbance** - Disrupting or preventing the peaceful and orderly conduct of classes, lectures, or meetings or unreasonably interfering with the freedom of any persons, including invited speakers, to express their views.

      **b.** **Academic misconduct** - Practicing any form of dishonesty, including cheating or plagiarism.

      **c.** **Fraud** - Deliberately furnishing false information to the university, either for personal gain or to harm another.

      **d.** **Unauthorized access/entry** - Entering a private office of an administrator, faculty or staff member, or student organization without appropriate permission or accessing building roofs, storage/trunk rooms, electrical closets, mail cabinets, offices, etc. without permission.

      **e.** **Disruptive behavior** - *Impairing, interfering with, or obstructing the orderly conduct, processes and functions of the University or surrounding community.* Behavior that may be representing a nuisance or danger to persons (including oneself) or property.

      **f.** **Binge drinking** - Activities that promote binge drinking or heavy and/or episodic drinking such as drinking games.

      **g.** **Gambling** - Including but not limited to contests of chance, illegal lottery, and policy for money or something of value; promoting or advancing gambling; gambling using university computing/network facilities; possessing gambling devices or gambling records.

      **h.** **Mail tampering** - Including but not limited to removing another person's mail or package from the mailboxes on campus.

      **i.** **Endangerment** - Acting to create or contribute to dangerous or unsafe environments anywhere on or off campus. Reckless or intentional acts that endanger or put at risk the welfare of oneself or others.

      **j.** Failure to Comply- Failing to comply with the directions of an authorized local, state, federal or university official acting in the performance of his or her duties, or any other person responsible for a facility or registered function acting in accordance with those responsibilities.

      **k.** **Failure to Report** - Students must notify staff of a policy violation(s) immediately. Notification must be sent to the designated student conduct official via Student Conduct and Community Standards.

      *l.* **Failure to Notify** - It is the obligation of every student to notify the designated campus official of any felony or misdemeanor arrests occurring at any time after the student pays his or her admissions deposit through graduation or separation from the institution, regardless of the geographic location of the arrest or specific crime alleged. Failure to do so may result in conduct charges by the university. The university may review the facts

Code of Conduct- Approved by the University Council, 09.21.2021

underlying the arrest to determine if there is an associated policy violation. ***Notification must be sent to the designated official via the Dean of Students.***

5. **University Property**
   a. **Misuse** - Removing, using, vandalizing, damaging, misusing, willfully destroying, or taking university property such as supplies, equipment, furniture, materials, services, or documents without authorization.
   b. **Camping** - Camping on university property without authorization by appropriate officials.
   c. **Forgery** - Forging, transferring, altering, or misusing any student record, identification card, or other university document.
   d. **Computer/equipment use** - Any unauthorized use of university video equipment, the campus wide or residential cable system, or university computers is prohibited and may result in disciplinary action. It is impermissible to use any video equipment or computer technology in a manner that infringes on another person's right to privacy or violates any provision of this code, and/or to remove video equipment or computer technology from the designated location. Other misuses of university or personal computers or technological equipment are strictly prohibited.
   e. **Updating records** - Failing to keep the university informed of the current mailing address and any change thereof.

6. **Safety and Security**

   *Disciplinary action may be taken against a student for violation of a federal, state, or local criminal statute. A definite relationship between the statutory violation and the university's rules and regulations must exist. The violation of a statute or conviction off campus must be shown to be such that it justifies action by the Code of Conduct.*

   a. **Theft** - Removing or using another individual's personal property without authorization.
   b. **Willful destruction of property** - Vandalizing, damaging, or destroying personal property of another individual.
   c. **Responding to a university employee** - Failing to comply with a directive by a university employee who has duly identified him or herself and is acting in performance of his or her duties on university property.
   d. **Entries and exits** - Tampering with or propping open outside doors or fire doors and/or refusing to leave any building or facility after being directed to do so by an authorized university official.
   e. **Willful destruction of property** - Vandalizing, damaging, or destroying personal property of another individual or of the university.
   f. **Burglary** - Unlawfully entering (trespassing) a structure with the intent to commit a felony or theft.
   g. **Robbery** - Unlawfully assaulting a person with the intent to take his or her property.

Code of Conduct- Approved by the University Council, 09.21.2021

    **h. Occupying a facility or building** - Remaining in any building or facility for any purpose after it is normally closed other than its authorized use or in such manner as to obstruct its authorized use by others.

    **i. Guests and visitation** - All guests must comply with all escort and visitation policies and procedures. Guests may be directed to vacate residence halls or academic buildings at any time for failure to abide by university policies and procedures.

    **j. Showing valid ID** - All students will be required to show a validated photo ID card when requested, and guests and visitors of Buffalo State students may be asked to show proof of identity.

    **k. Escorting guests** - Students are entitled to have guests and visitors, but they must be escorted at all times. Students are responsible for the actions of their guests and visitors.

    **l. Animals/pets** - Having animals in university buildings without written authorization from appropriate university officials. Additionally, animals should not be unleashed or otherwise unattended on university property.

    **m. Parking** - Violating university parking and driving regulations. (Parking is prohibited at all times on roadways, sidewalks, lawns, grounds, lanes, and throughways of parking areas except as posted.) The university may have illegally parked vehicles towed away, the expense of which will be borne by the violator.

    **n. Mechanized vehicles** - Driving motorcycles, snowmobiles, or other mechanized vehicles on university property other than on provided roadways.

    **o. Incitement** - Inciting any other person(s) to commit any of the acts herein prohibited.

**7. Weapons and Fire Policy**

Possessing or using any object or substance designed to inflict a wound, cause injury, or incapacitate, including but not limited to all firearms, switchblade knives, knives with blades five or more inches in length, explosives, fireworks, or dangerous chemicals (except as authorized for use in class, or in connection with university-sponsored research or other approved activities). The term firearms include pellet guns, air guns, rifles, shotguns, handguns, multiple firing weapons, and any weapon capable of firing a shot. Permission to store a rifle, shotgun, or firearm may be requested through the University Police Department (UPD) and is subject to written approval by UPD. All weapons for which permission has been granted for storage on campus must be stored at UPD and may be signed out by the owners through a log maintained by UPD. Students may NOT bring any weapon onto campus without prior written approval to do so. NOTE: Possession of any rifle, shotgun, or firearm in or on any building or grounds of the university is also a crime under New York State law without written authorization from the president. Any person doing so without authorization is subject to arrest.

    **a. Fire safety** - Causing or creating a fire, regardless of intent (except as authorized for use in class, or in connection with university-sponsored research or other approved activities).

    **b. Tampering with fire or life-safety devices** - Tampering includes but is not limited to covering a fire or life-safety detection device; discharging a fire extinguisher or activating a fire sprinkler; and tampering with exits signs, emergency phone systems, smoke or heat detectors, fire hoses, security systems, locked exterior doors, or other equipment.

    **c. Firearms and projectile-firing devices** - Possessing on university property a rifle, shotgun, pistol, revolver, or other firearm; air gun, BB gun, paintball gun, or any other replica of a

firearm, instrument, or weapon in which the propelling force is air or carbon dioxide; knife, club, slingshot, or other thing adaptable to the purpose of a weapon without the written authorization of the chief administrative officer, whether or not a license to possess same has been issued to such person.

d. **Combustible materials** - Using or possessing on university property any fireworks, explosives, combustible materials, mechanical machinery, fuel-powered equipment, or noxious gases without the written authorization of the chief administrative officer.

e. **Falsifying an emergency** - Making a false report of a bomb, fire, or other emergency in any building, structure, or facility on university property.

f. **Altering fire or life-safety equipment** - Altering or making unwarranted use of firefighting equipment, safety devices, or other emergency safety equipment.

g. **Activating fire and life-safety systems** - Activating fire and life-safety systems (e.g., fire alarms, smoke detectors) due to negligence or malicious intent. Persons who have activated the fire alarm system in a building must immediately report themselves to hall staff and/or University Police.

h. **Evacuation routes** - Obstructing the evacuation route within a hallway, student room, suite, apartment, stairwell, entrance/exit, etc. (desks and other furniture cannot block exit doors).

i. **Failing to conform to safety regulations** - Including but not limited to falsely reporting an incident; failing to evacuate facilities in a timely fashion in emergency situations or in response to fire alarms, fire codes, and regulations; and inappropriately using the fire alarm system.

8. **Alcohol and Other Drugs**

a. **Alcohol violation** - Consumption of alcoholic beverages is prohibited unless students are 21 years of age. Students who are under 21 and are under the influence of, possessing, and/or consuming alcoholic beverages on campus will be in violation of New York State law as well as Buffalo State University policies. (This includes sale and/or distribution of alcoholic beverages other than in authorized areas and to persons at least 21 years of age.) Open containers and public intoxication are prohibited. Students who are irresponsible in their use of alcohol or who provide alcohol to minors will be subject to this code regardless of the student's age. This applies to both on-campus and off-campus behavior.

b. **Smoking** - Smoking, including the use of devices or any kind (e.g., electronic), anywhere on university property.

c. **Drug violation -** Possessing, selling, using, or distributing illegal drugs or cannabis on university property or off campus where a nexus between the off-campus location and the university exists under this code. Using, offering for sale, distributing, possessing, and/or being under the influence of or manufacturing any controlled substances and/or paraphernalia, including prescription medications, except as expressly permitted by law. University officials will confiscate drug paraphernalia and illegal drugs and cannabis. Students are subject to this code regardless of their age.

**SECTION 4: STUDENT CONDUCT PROCEDURES**

Code of Conduct- Approved by the University Council, 09.21.2021

*The student conduct system addresses charges that are brought against a student who allegedly violates the Code of Conduct. The student conduct system uses a "preponderance of evidence" standard of proof. A preponderance of evidence standard evaluates whether it is more likely than not that a violation occurred. Buffalo State University email is the official means of communication between student conduct officials and students on all matters pertaining to the student conduct system.*

**Student Conduct Advisers**

Student conduct advisers will be drawn from a list of faculty and staff members selected and trained by the designated student conduct official. Student conduct advisers will advise students of their rights and responsibilities, resources that are available to them, and student conduct procedures before an administrative hearing or conduct board hearing.

**The Student Conduct Board will**

- hear and evaluate charges and evidence,
- question participants on matters directly germane to the case,
- make decisions on findings of responsible or not responsible, and
- make final determinations of sanctions in cases of responsible findings.

**Conduct Board Composition and Limitations**

The Student Conduct Board will consist of volunteer members of the campus community who are current faculty members, staff members, or students. Each board panel will consist of seven persons: three students, two faculty members, and two staff members. Each board will also consist of two students, one faculty member, and one staff member serving as alternates. Board members will hear cases on a rotating basis.

The following persons may not serve on the Student Conduct Board: the dean of students; University Police officers and staff members.

Any board member who has a personal or professional interest in the outcome of a case must disqualify him or herself from hearing the case. Where the designated student conduct official has reason to suspect that such an interest exists, the designated student conduct official must request that the board member disqualify him or herself and inform the board of that request. A simple majority of the board may elect to exclude a board member from participating where the board believes a personal or professional interest exists.

A quorum shall consist of five members, including the chair, at least one of whom must be a student.

**Student Conduct Board Chair**

The Student Conduct Board chair position shall be filled by a university faculty or professional staff member drawn from the conduct board pool and shall serve on a rotating basis. Student Conduct Board chairs will

Updated January 2023

Code of Conduct- Approved by the University Council, 09.21.2021

- chair hearings: formally present charges to the board and ensure the orderly and thorough presentation of necessary evidence, participate in board discussion, and vote on whether the student is responsible or not responsible; and
- inform the accused student(s) of the board's findings and sanctions if applicable.

**Appeals Review Board**

The Appeals Review Board will consist of five members: one faculty member, one staff member, two students, and one member of the University Council. The chair of the Appeals Review Board will be any faculty or staff member who serves as a member of the Student Conduct Board. The chair formally presents all information on the case being appealed, participates in board discussions, and votes on all matters before the board. Members of the Appeals Review Board will be assigned from a list of volunteers of faculty, staff, and students; the University Council member will be appointed by the chair of the University Council. A quorum shall consist of three members, including the chair, at least one of whom must be a student.

**The Appeals Review Board will**

- review appeals submitted by students within the designated time frame;
- determine which cases will be granted appeals;
- where deemed appropriate, allow students who have received guilty verdicts to personally address the board and answer questions posed by members of the Appeals Review Board;
- in cases where sexual misconduct is alleged, and where deemed appropriate, allow complainants who wish to challenge the results of a hearing to personally address the board and answer questions posed by members of the Appeals Review Board;
- where deemed appropriate, vacate findings and/or reduce sanctions;
- where deemed appropriate, grant new hearings; and
- where deemed appropriate, uphold the decisions of the original Student Conduct Board.

**Initiating Complaints and Scheduling Hearings**

Complaints may be initiated by any member of the university community (student, faculty, or staff). Any complaint concerning a violation of the Code of Conduct should be made or referred to the Student Conduct and Community Standards Office as soon as practicable but no later than the end of the semester, or within 30 days of the incident date if the incident occurs between semesters. All complaints must be filed in writing. If it is determined that the complaint is within jurisdiction, a hearing shall be scheduled. Both the complainant(s) and the accused shall be notified by email to their official university email addresses at least three business days before the hearing date. The hearing will be concerned only with the allegations written in the complaint. In cases where sexual misconduct is alleged, the complaint and accused shall, upon request of either party, be separated from view of each other during the course of a hearing, such that both parties and the Student Conduct Board are able to hear each other.

Student Conduct Board and administrative hearings are held Mondays through Fridays.

**Hearing the Case**

Accused students and complainants may each bring a student conduct adviser of their choice at their own expense. This person may assist them during the hearing. Student conduct advisers take no direct part in

Updated January 2023

Code of Conduct- Approved by the University Council, 09.21.2021

the proceedings unless permitted to do so by the chair, although they may advise students during the proceedings. All hearings are closed to the public. Only individuals directly concerned with the existing case may be present during a hearing, e.g., complainant(s), witnesses, the accused, and student conduct adviser(s). Observers are not allowed. Complainants and accused students are responsible for presenting their cases, with the assistance of a student conduct adviser if desired, and have the right to present witnesses on their behalf and to ask questions of witnesses presented by the opposing party or parties. It is the responsibility of both accused student(s) and complainant(s) to notify witnesses of the time and place of the student conduct hearing. No evidence other than that received at the hearing may be considered by the Student Conduct Board. Written statements by anyone not present at the hearing are not acceptable.

## Decisions

The Student Conduct Board will determine the responsibility of the student(s) accused by a simple majority vote of those present during the entire hearing. Judgment shall be based solely on the evidence presented at a hearing. In cases where sexual misconduct is alleged, judgment shall be based solely on a preponderance of the evidence presented at the hearing, and the provisions of the Sexual Violence Addendum will apply. In the case of a responsible decision", short of suspension or dismissal from the university, the Student Conduct Board shall determine the sanction. Sanctions will be determined by a simple majority vote. Past disciplinary records may be taken into consideration.

The board chair may present the decision of the Student Conduct Board to the accused student(s) and summarize the reasons for the decisions. A student found in violation of the Code of Conduct will be asked to sign a statement indicating that they understand the decision. Signing the statement does not necessarily indicate agreement with the decision.

Both the accused student(s) and the complainant(s) must be informed as soon as practicable but no later than 30 days after the outcome of any institutional disciplinary proceeding brought alleging violation of the code. The outcome of a disciplinary proceeding represents only the institution's final determination with respect to the alleged offense and any sanction that is imposed against the accused student(s).

1. **The following is a timeline of the major steps in the conduct review process:***

   a. **Student Conduct Hearing:** If a complaint is submitted, a student conduct hearing will be held as soon as possible. All parties will receive at least three business days' notice.
   b. **Parties Receiving Notice of the Outcome of a Student Conduct Hearing:** Both the complainant(s) and the accused will receive notice of the outcome of a conduct hearing as soon as possible.
   c. **Parties Filing an Appeal of the Results of a Student Conduct Hearing:** Both the complainant(s) and the accused are entitled to an appeal of the results of a conduct hearing. Such an appeal must be submitted within three days of receipt of notice of the outcome of the conduct hearing.
   d. **Appeals Hearing and Notice of the Outcome of an Appeal:** The Appeals Review Board will meet to review appeals as soon as possible once all appeal-related documents have been submitted. Upon the conclusion of the appeal, both the complainant(s) and the

FILED: ERIE COUNTY CLERK 01/30/2024 06:13 PM
NYSCEF DOC. NO. 5    Case 1:24-cv-00150   Document 1-1   Filed 02/16/24   Page 50 of 132

INDEX NO. 801516/2024
RECEIVED NYSCEF: 01/30/2024

Code of Conduct- Approved by the University Council, 09.21.2021

accused will receive notice of the outcome via email. The decision of the Appeals Review
Board is final.

*Reasonable exceptions to the stated time frames are at the discretion of the designated student
conduct official.

2. **Referrals**

   a. When an incident occurs and there are allegations that a student violated the Code of
      Conduct, a Student Conduct Referral may be filed by any university faculty member,
      staff member, or student. Individuals who wish to initiate a student conduct complaint
      must put the complaint in writing. Any complaint should be submitted as soon as
      possible after the event takes place, preferably within the academic year in which the
      alleged violation took place. While timeliness is preferable, there is no deadline by
      which a complaint must be filed as long as the respondent is a current student at Buffalo
      State University. Assistance in filing a complaint is available from the Student Conduct
      and Community Standards Office, the Dean of Students Office, the Counseling Center, or
      the Equity and Campus Diversity Office/Title IX coordinator.

   b. When an allegation of misconduct has been determined, a student will
      i. be notified via Buffalo State University email that a complaint has been filed
         against him or her;
      ii. have an opportunity to meet with a student conduct official to review the Student
          Conduct Referral, which includes the Code of Conduct violations;
      iii. learn about the student conduct proceedings and have questions answered;
      iv. give his or her perspective about the incident; accused students shall be given the
          opportunity to provide a written account of their perspective of the act(s) in
          question to the Student Conduct and Community Standards Office. If a statement
          is provided, it will be disclosed to the complainant(s) and the Student Conduct
          Board. This statement must be submitted at least three days prior to the hearing;
      v. provide witness information, if applicable; and
      vi. receive information about the assignment of a student conduct adviser.
      vii. Students may not be required to sign a non-disclosure agreement or other
           document forbidding them from discussing their case. This applies to
           respondents and reporting individuals. Participants are not themselves barred by
           the Family Educational Rights and Privacy Act (FERPA) from sharing this
           information; however, this does not allow students to unreasonably share private
           information in a manner intended to harm or embarrass another individual, or in
           a manner that would recklessly do so regardless of intention. Such sharing may
           be considered retaliation, which can result in separate charges under the Code of
           Conduct.

      viii. The student conduct process will run concurrently with any criminal justice
            investigation and proceeding, if applicable, except for temporary delays as
            requested by external municipal entities while law enforcement gathers

Updated January 2023

Code of Conduct- Approved by the University Council, 09.21.2021

evidence. Temporary delays will not last more than 10 days except when law enforcement specifically requests and justifies a longer delay.

ix. The student conduct official will determine the manner in which the case will be resolved and will communicate this to the respondent(s) and the complainant(s).

3. **Resolutions:** Resolutions are the manner in which student conduct cases are resolved. A description of each type of resolution follows:

  a. **Administrative Resolution Hearing**
    i. Students will attend a hearing with a student conduct official to review the incident and speak about options for an administrative resolution.
    ii. The respondent(s) will have the right to accept or deny responsibility for the violations that they are charged with. The student conduct official will render a finding based on the preponderance of evidence. If the finding(s) warrant any sanction, it will be imposed and communicated to the respondent(s) in writing via Buffalo State University email. The student conduct official reserves the right to render findings and impose sanctions in the absence of the respondent should the respondent fail to attend his or her scheduled hearing. The respondent maintains the right to file an appeal. Imposed sanctions may be applied only in cases where sanctions will not result in suspension or dismissal from the university.
    iii. Absence of Student Conduct Board members: In the event that all parties involved agree to have a hearing without the presence of Student Conduct Board or Appeals Review Board members, then additional faculty or staff members will be substituted. All parties must sign a waiver acknowledging their agreement to this substitution.
    iv. Student conduct body/committee hearing: A hearing will be scheduled when the respondent contests the referral for an Administrative Resolution Hearing and/or is facing suspension or dismissal from the university, or at the discretion of the student conduct official. The student conduct official may later serve as the complainant at a student conduct hearing. The Student Conduct and Community Standards Office will make every effort to schedule hearings around students' academic schedules only. Hearings are conducted as follows:

      1. Both the respondent(s) and the complainant(s):

        a. receive written notice of a hearing date, time, and place at least three business days in advance;
        b. must represent themselves;
        c. may be separated during the hearing at the request of either party and provide testimony via alternative arrangements, including telephone or videoconferencing or testifying with a room partition.

Updated January 2023

Code of Conduct- Approved by the University Council, 09.21.2021

    d.  may have one student conduct adviser present. The student conduct adviser may not address the student conduct body but may speak privately with the advisee during the proceedings;

    e.  have the right to call witnesses who have direct knowledge of the incident (names of witnesses must be submitted to the student conduct official at least three business day before the hearing);

    f.  hear the description of the incident and conduct charges (the respondent(s) will then state his or her responsibility for the charges);

    g.  have the opportunity to make an opening statement;

    h.  have the opportunity to ask questions of each other and their witnesses;

    i.  may be questioned by the student conduct body;

    j.  have the opportunity to make a closing statement. Both the complainant(s) and the respondent(s) are entitled to make an impact statement during the point of the proceeding where the Student Conduct Board is deliberating on appropriate sanctions.

v.  The student conduct body encourages student involvement in the conduct proceedings and relies on full and open discussion of cases with all parties concerned in order to render a fair judgment. The student conduct system is administrative in nature and, as such, is not considered a court of law where formal rules of process, procedure, or technical rules of evidence apply.

1.  Referrals involving multiple students for the same incident can be resolved at one hearing.

2.  Hearings are regarded as confidential and closed to all but the principals of the case, their witnesses, their student conduct advisers, and the Student Conduct and Community Standards Office. Student Conduct Board members in-training may observe.

3.  An official audio recording will be made of the proceedings. This recording is the property of the university and will not be duplicated or released. Participants are prohibited from making their own recordings during the hearing (including but not limited to audio, photographic, and written recordings). The respondent(s) and the complainant(s) may submit a written request to Student Conduct and Community Standards Office for permission to listen to the official audio recording in a supervised location on campus. An official written transcript can be provided by the university at the requesting party's expense.

4.  Evidence to be presented by the complainant(s) and respondent(s) during any hearing on the charges must be submitted to the Student Conduct and Community Standards Office at least three business days in advance of the scheduled hearing. This evidence will be shared with the

Code of Conduct- Approved by the University Council, 09.21.2021

opposing party. The Student Conduct Board or chair may exclude evidence that has not been shared or adjourn the hearing to afford all parties the opportunity to review evidence to be presented during the hearing. The Student Conduct and Community Standards Office or the student conduct body will make the final decision related to the admissibility of all evidence.

5.  It shall be the responsibility of the student conduct body to determine the relevancy of the testimony and written evidence.

6.  Should the respondent(s) or complainant(s) fail to appear for a scheduled hearing, a finding will be made based on the information available, and sanction(s) will be imposed, if appropriate.

7.  The primary function of any student conduct body is to determine, using a preponderance standard, whether the respondent(s) has violated the provisions of the Code of Conduct and if so, recommend an appropriate sanction.

8.  The respondent(s) will be notified in writing via Buffalo State University email of the final decision of the student conduct body and of the right to appeal. Consistent with the provisions of the Family Educational Rights and Privacy Act (FERPA), and in cases involving sexual offenses or crimes of violence, both the respondent(s) and the complainant(s) shall be notified of the final decision of the student conduct body.

9.  The respondent's status at the university is not altered until the appeal decision is final. In certain cases, however, the vice president may determine that the respondent's presence is a threat to the university community and uphold the sanction imposed by the student conduct body until the appeal is final.

b.  **Alternative Dispute Resolution**

   i.  Mediation is a voluntary process that requires the commitment of all parties. It is appropriate when a violation arises out of a dispute between students. It is generally reserved for first-time and less serious violation(s). The goal is to reach a written agreement to resolve the dispute and to prevent it from recurring. The student conduct administrator will retain a record of the mediation efforts and the mediation agreement. If the parties fail to live up to the agreed settlement, or if mediation attempts fail to reach an agreement, a referral will be processed.

   ii.  Community Standards Accountability Board (CSAB): CSAB is a restorative justice practice that presents an alternative to the traditional disciplinary process by engaging the responsible parties, as well as the parties harmed by their behavior, in a dialogue that seeks to repair harm. The goal is to design a process that reintegrates responsible parties into the community. Students also play a key role in deciding what they must do to repair the harm they may have caused by the behavior. Responsible parties must acknowledge that their behavior violated the Code of Conduct and harmed another in order to participate in the CSAB process.

Updated January 2023

Code of Conduct- Approved by the University Council, 09.21.2021

This procedure is generally reserved for first-time and less serious violations. CSAB facilitators are selected from a pool of faculty, staff, and students.

### 4. Student Rights

**Students have the following rights:**

a. The right to a prompt response to any complaint and to have their complaint investigated and adjudicated in an impartial, timely, and thorough manner by individuals who receive annual training in conducting investigations of sexual violence, the effects of trauma, impartiality, the rights of the respondent(s), including the right to a presumption that the respondent(s) is "not responsible" until a finding of responsibility is made, and other issues related to sexual assault, domestic violence, dating violence, and stalking.

b. The right to an investigation and process conducted in a manner that recognizes the legal and policy requirements of due process (including fairness, impartiality, and a meaningful opportunity to be heard) and is not conducted by individuals with a conflict of interest.

c. The right to receive advance written or electronic notice of the date, time, and location of any meeting or hearing they are required to or eligible to attend. Accused individuals will also be told of the factual allegations concerning the violation, a reference to the specific Code of Conduct provisions alleged to have been violated, and possible sanctions.

d. The right to have a conduct process run concurrently with a criminal justice investigation and proceeding, except for temporary delays as requested by external municipal entities while law enforcement gathers evidence. Temporary delays should not last more than 10 days except when law enforcement specifically requests and justifies a longer delay.

e. The right to offer evidence during an investigation and to review available relevant evidence in the case file (or otherwise held by the university).

f. The right to present evidence and testimony at a hearing, where appropriate.

g. The right to a range of options for providing testimony via alternative arrangements, including telephone or videoconferencing or testifying with a room partition.

h. The right to exclude prior sexual history with persons other than the other party in the conduct process or their own or past mental health diagnoses or treatment from admittance in the university disciplinary stage that determines responsibility. Past findings of domestic violence, dating violence, stalking, or sexual assault may be admissible in the disciplinary stage that determines sanction.

i. The right to ask questions of the decision maker and, via the decision maker, indirectly request responses from other parties and any other witnesses present.

j. The right to make an impact statement during the point of the proceeding where the decision maker is deliberating on appropriate sanctions.

k. The right to simultaneous (among the parties) written or electronic notification of the outcome of a conduct proceeding, including the decision, any sanctions, and the rationale for the decision and any sanctions.

l. The right to written or electronic notice about the sanctions(s) that may be imposed on the accused based on the outcome of the conduct proceeding. For students found

Code of Conduct- Approved by the University Council, 09.21.2021

responsible for sexual assault, the available sanctions are suspension with additional requirements and expulsion or dismissal.

m.  Access to at least one level of appeal of a determination before a panel, which may include one or more students, that is fair and impartial and does not include individuals with a conflict of interest.

n.  The right to have access to the record of a student conduct hearing, which shall be preserved and maintained for at least five years and is available by contacting the Student Conduct and Community Standards Office.

o.  The right to choose whether to disclose or discuss the outcome of a student conduct hearing.

p.  The right to have all information obtained during the course of the conduct process protected from public release until the appeals panel makes a final determination, unless otherwise required by law.

## SECTION 5: CASES OF SEXUAL MISCONDUCT

### 1. Amnesty in Sexual and Interpersonal Violence Cases

The health and safety of every student at the State University of New York and its state-operated and community universitys is of utmost importance. Buffalo State recognizes that students who have been drinking and/or using drugs (whether such use is voluntary or involuntary) at the time that violence, including but not limited to domestic violence, dating violence, stalking, or sexual assault, occurs may be hesitant to report such incidents due to fear of potential consequences for their own conduct. Buffalo State strongly encourages students to report incidents of domestic violence, dating violence, stalking, or sexual assault to campus officials. A bystander acting in good faith or a reporting individual acting in good faith that discloses any incident of domestic violence, dating violence, stalking, or sexual assault to Buffalo State officials or law enforcement will not be subject to Buffalo State's Code of Conduct action for violations of alcohol and/or drug use policies occurring at or near the time of the commission of the domestic violence, dating violence, stalking, or sexual assault.

### 2. Policies Related to the Resolution of Allegations of Sexual Misconduct

a.  The campus will promptly review existing no-contact orders at a party's request, including requests to modify the terms of or discontinue the order. The parties can submit evidence to support their requests. If the campus finds it appropriate, it can even make a schedule for parties who seek to use the same facilities without running afoul of the no-contact order.

b.  The campus will promptly review existing interim suspensions at a party's request, including requests to modify the terms or discontinue it. Parties can submit evidence to support their request.

c.  The campus will promptly review existing interim measures and accommodations at the request of the party who is affected by the interim measure or accommodation. The parties can submit evidence to support their request.

d.  For crimes of violence, including but not limited to sexual violence, defined as crimes that meet the reporting requirements pursuant to the federal Clery Act established in 20 U.S.C. 1092(f)(1)(F)(i)(I)-(VIII), institutions shall make a notation on the transcript of students found responsible after a conduct process that they were "suspended after a

Updated January 2023

Code of Conduct- Approved by the University Council, 09.21.2021

finding of responsibility for a Code of Conduct violation" or "expelled after a finding of responsibility for a Code of Conduct violation." For the respondent who withdraws from the institution while such conduct charges are pending and declines to complete the disciplinary process, institutions shall make a notation on the transcript of such students that they "withdrew with conduct charges pending." Each institution shall publish a policy on transcript notations and appeals seeking removal of a transcript notation for a suspension, provided that such notation shall not be removed prior to one year after conclusion of the suspension, while notations for expulsion shall not be removed. If a finding of responsibility is vacated for any reason, any such transcript notation shall be removed.

e.  Students may submit an appeal to the dean of students seeking removal of a transcript notation for a suspension, provided that such notation shall not be removed prior to one year after conclusion of the suspension, while notations for expulsion shall not be removed. If a finding of responsibility is vacated for any reason, any such transcript notation shall be removed.

f.  Policy on how parties can review the case file/evidence: In student disciplinary proceedings involving domestic violence, dating violence, stalking, or sexual violence, the campus will allow parties to review available evidence held by the campus in accordance with university/university policy. Parties can also present available evidence as appropriate under campus policies.

**SECTION 6: SANCTIONS, TEMPORARY AND ADMINISTRATIVE DIRECTIVES**

It is the responsibility of the student to complete sanctions within the required time period. A student must return to the Student Conduct and Community Standards Office the "Completion of Sanction" form signed by the appropriate individuals. Failure to complete sanctions may result in an official "hold" placed on all permanent records of a student and/or further charges.

In the event of non-compliance with an order of suspension or dismissal, University Police will be responsible for ensuring enforcement. The following sanctions may be imposed on an individual or student organization if they are found responsible for one of the specified violations.

1.  **Sanctions**
    a.  **Reprimand or warning** - Written notice that continuation or repetition of the violation within a period of time stated in the warning may be a cause for more severe disciplinary action.
    b.  **Social probation** - Restriction from participation in specified university/sponsored activities, events, or use of specified university facilities.
    c.  **Restitution** - Reimbursement for damage or misuse of property.
    d.  **Educational workshops and programs** - Workshops or programs produced by student respondents pertaining to their violations and submitted to the Student Conduct and Community Standards Office.
    e.  **University or community service** - In consultation with the Student Conduct and Community Standards Office, students may be assigned appropriate community or university service. Such service may not exceed 50 hours and may not conflict with a student's religious or ethical views.

f. **Disciplinary probation** - Status of student is declared probationary for a specific period of time that shall not be less than three months nor more than one calendar year. Further violation of recognized rules and regulations may warrant immediate suspension or expulsion from the university. This sanction precludes the student from representing the university in an official capacity (e.g., intercollegiate athletics or student office) and may include the loss of specific privileges.

g. **Suspension** - Students suspended from the university as a result of violations of the Code of Conduct shall not receive credit for the semester in which the expulsion occurred and will be liable for all tuition and fees for that semester. During the suspension period, students are not eligible to register for or take classes. Students shall not, without prior permission of the dean of students, enter or remain on the campus of Buffalo State University. Violation of any condition of the suspension shall be grounds for dismissal from the university. Resident students must vacate the residence halls within 48 hours of notification of the suspension, unless otherwise specified. Suspended students may not visit the campus unless prior permission is given by the dean of students. Students will be banned from campus until their suspension ends. Violations of this ban and suspension may subject students to arrest.

h. **Dismissal** - Permanent dismissal from the university is ordered in cases of serious violations of the Code of Conduct. Cases involving sanctions of dismissal from the university are reviewed and approved by the university president and the vice president for student affairs. As a result of this determination, students may not reapply for admission. Students are banned from campus. Dismissed students found on campus may be subject to arrest. Students dismissed from the university as a result of violations of the Code of Conduct shall not receive credit for the semester in which the expulsion occurred and are liable for all tuition and fees for that semester.

i. **Interim suspension** - The designated student conduct official may suspend a student pending a hearing and determination thereof whenever in their judgment the continued presence of such student would constitute a clear danger to the student or to the safety of persons or property or would pose an immediate threat of disruptive interference with the normal conduct of the institution's activities and functions. During an interim suspension, the student shall not, without prior permission in writing from the vice president for student affairs or the designated student conduct official, enter or remain on the campus of Buffalo State University other than to attend the hearing. Violation of any condition of the interim suspension shall be grounds for dismissal from the university. The student must leave the campus immediately upon notification of the suspension or expulsion unless an appeal is granted, or an extension is approved by the designated student conduct official. Students who are placed on an interim suspension will be scheduled for a Student Conduct Board hearing within a reasonable time frame.

j. **Sexual misconduct sanctions** - Sanctioning for sexual violence violations shall follow the guidelines set out in the Code of Conduct except as described below:
   i. Past findings of domestic violence, dating violence, stalking, or sexual assault may be admissible in the disciplinary stage that determines sanction.

Code of Conduct- Approved by the University Council, 09.21.2021

    ii.  Neither mediation nor informal resolutions are appropriate in cases of sexual assault.

    iii.  For students found responsible for sexual assault, the available sanctions are suspension with additional requirements and expulsion/dismissal.

**k.** **Residence hall sanctions** - Sanctioning for residence hall violations shall follow the guidelines set out in the Code of Conduct except as described below:

    i.  **Residence hall probation.** A student's resident status is declared probationary for a specified period of time. Residence hall probation is a strict warning against further violation(s) of residence hall/university policies. Further violations may result in loss of a student's license to live on campus.

    ii.  **Imposed reassignment.** A resident student will be reassigned to an available space on campus to be determined by the Student Conduct Board and Residence Life Office. The student will be required to move to the new assignment within a specified and reasonable period of time or be subject to immediate suspension from the residence halls.

    iii.  **Removal in abeyance.** Students placed on removal in abeyance are permitted to remain as a campus resident provided that they abide by the rules and regulations outlined in the Code of Conduct and for campus residency. Students must complete all other sanctions assigned. Violations of any campus policies while placed on removal in abeyance will result in immediate removal from campus housing.

    iv.  **Removal from the residence halls.** The student will be required to immediately vacate the residence halls for a reasonable specified period. The student may apply to the Student Conduct and Community Standards Office to be readmitted to the residence halls following a period of suspension. Any individual under suspension or expulsion from the residence hall is prohibited from entering any residence hall without explicit written permission from the Student Conduct and Community Standards Office.

    v.  **Housing termination/non-renewal of license.** Students who have their housing terminated will no longer be permitted to live in or visit the residence halls for a two-year period.

**2.** **Transcript Notation**

    **a.** Effective June 1, 2004, Buffalo State University will indicate a permanent notation on the official university transcript of any student who is dismissed as a result of either serious and/or repeated violations of the Code of Conduct.

    **b.** For code violations that are a threat to the safety of others, the university shall make a notation on the transcript of students found responsible after a conduct process that they were "suspended after a finding of responsibility for a Code of Conduct violation" or "expelled after a finding of responsibility for a Code of Conduct violation." For respondents who withdraw from the institution while such conduct charges are pending and who decline to complete the disciplinary process, the university shall make a notation on the transcripts that they "withdrew with conduct charges pending."

Code of Conduct- Approved by the University Council, 09.21.2021

    c. Violations equivalent to the Clery Act (as updated by the Violence Against Women Act Final Regulations) Part I. Crimes covered under the legislation that would require a transcript notation are murder; rape, fondling, incest, and statutory rape; robbery; aggravated assault; burglary; motor vehicle theft; manslaughter; and arson. Notations may not be removed prior to one year after conclusion of the suspension, while notations for expulsion shall not be removed. If a finding of responsibility is vacated for any reason, any such transcript notation shall be removed.

3. **Administrative Directives**

    a. **Absence of respondent** - If the respondent does not appear at the hearing and if it has been determined that the respondent did receive the required notice of the hearing, the case will be heard in his or her absence and a decision will be rendered by the Student Conduct Board.

    b. **Absence of the complainant** - If the complainant does not appear at the hearing and if it has been determined that the complainant did receive the required notice of the hearing, the case may be dismissed.

    c. **Absence of quorum** - In the event that a quorum of the Student Conduct Board is not present, the hearing will be rescheduled. The rescheduled hearing will take place within 10 days of the first hearing date.

    d. **Reporting decisions** - A written report of the findings of the student conduct body and the sanctions imposed or recommended by the body shall be forwarded to the Student Conduct and Community Standards Office.

    e. **Conduct records**

        i. Student records, including files, taped proceedings, and testimony of cases heard before the Student Conduct Board are confidential.

        ii. University guidelines concerning the confidentiality of student records in accordance with the Family Educational Rights and Privacy Act (FERPA) (PL 93-380) of 1974, as amended, shall be followed.

    f. **Non-retaliation** - All persons are prohibited from engaging in any form of retaliatory action against another party including the complainant(s) and student(s) accused, witnesses at a hearing, members of the Student Conduct or Appeals Review boards, Student Affairs staff, or any other person associated with the conduct complaint. Retaliation is considered to be any action that is perceived as intimidating, hostile, harassing, retributive, vengeful, or violent that occurs as a result of a conduct action.

4. **Appeals**

    a. An appeal must be made in writing to the Student Conduct and Community Standards Office within three days of receipt of notification of the outcome of the hearing. An appeal must include the specific reason(s) for the request. Such reasons for appeal are limited to the following: procedural error, inappropriate application of university regulations, presence of new information, or severity of the sanctions imposed. The Appeals Review Board shall first determine whether or not an appeal will be granted. If granted, the Appeals Review Board shall make a decision to amend the sanctions and/or findings for the case or schedule a rehearing. In cases where an error is found or if there is compelling new evidence, the Appeals Review Board shall issue a new decision or recommend a new

Updated January 2023

hearing. The Appeals Review Board may elect to request to speak directly with complainants, witnesses, or the accused student(s). In cases where sexual violence is alleged, both the complainant(s) and the accused have the right to request an appeal of any decision made by a student conduct body that may include one or more students, that is fair and impartial, and that does not include individuals with a conflict of interest.

**b.** The non-requesting party will receive notice of the appeal and may submit either his or her own appeal or a written response to the requesting party's appeal within 10 days, which the Appeals Review Board will consider together.

**c.** All sanctions imposed shall be considered in effect until or unless reversed by the Appeals Review Board. The decision of the Appeals Review Board is final.

*Revisions or Amendments*

*All material revisions or amendments to the Code of Conduct must be approved by the University Council with the advice of the president.*

# EXHIBIT D

Case 1:24-cv-00150 Document 1-1 Filed 02/16/24 Page 62 of 132

# Buffalo State College

# Code of Student Rights, Freedoms, and Responsibilities

# and

# Sexual Violence Addendum

*Approved by the College Council, February 24, 2015
and Revised to Comply with NYS "Enough is Enough" Law
September, 2015*

Code of Student Rights, Freedoms and Responsibilities

# Table of Contents

I.      Introduction ................................................................................................ 3
II.     Title ............................................................................................................ 4
III.    Authorization for Establishment of the Code ............................................. 4
IV.     Definitions .................................................................................................. 4
V.      Student Rights and Freedoms .................................................................. 5
VI.     Violations of the Code of Rights, Freedoms and Responsibilities
        for Students ............................................................................................... 7
VII.    Judicial System and Process .................................................................... 9
VIII.   Revisions and / or Amendments ............................................................ .16

## Sexual Violence Addendum

I.      Introduction ............................................................................................. 18
II.     Definition of Violations ............................................................................ 18
III.    Policy for Alcohol and/or Drug Use Amnesty in Sexual and Interpersonal
        Violence Cases ....................................................................................... 20
IV.     Students' Bill of Rights ............................................................................ 20
V.      Judicial System and Process .................................................................. 21
VI.     Timeline .................................................................................................. 25
VII.    Sanctions ................................................................................................ 26
VIII.   Policies Required by *Enough is Enough* Legislation ............................. 26
IX.     Non-Retaliation ....................................................................................... 27
X.      Revisions and or Amendments ............................................................... 27

# Buffalo State College
# Code of Student
# Rights, Freedoms, and Responsibilities
### *(Revised, September, 2015)*

## I.    Introduction

**Higher education, with its emphasis on individual growth and independent thinking, requires a high degree of freedom. Yet, it also demands an orderly, harmonious atmosphere in which its members may pursue those aims in peace and security.  Accordingly, the Buffalo State campus is governed by laws to foster such an atmosphere. Its policies and procedures are designed to guide student conduct and to ensure fair treatment for all students.  Those policies follow and articulate student rights and responsibilities.  Contact the Dean of Students Office (Student Union 306, 878-4618) should you require assistance with a specific issue or clarification of any policy. Students are expected to know the contents of this document.**

This document recognizes that students have rights, freedoms and responsibilities both as citizens and as members of the college community.  It is meant to be operable within the provisions of the Constitution of the United States; federal, state and local laws; and the policies of the Board of Trustees of the State University of New York.

The Code of Student Rights, Freedoms and Responsibilities is published each semester by the Office of Student Affairs.  It defines student rights, freedoms and responsibilities; it defines proscribed student conduct; it provides due process and delineates sanctions when guilt has been properly determined.

Students should be aware that, effective June 1, 2004, Buffalo State College will indicate a permanent notation on the official college transcript of any student that is dismissed as a result of either serious and/or repeated violations of the *Code of Student Rights, Freedoms and Responsibilities*.  Students dismissed from the College as a result of violations of the *Code* shall not receive credit for the semester in which the expulsion occurred and will be liable for all tuition and fees for that semester.

Students should also be aware that the College will vigorously prosecute students who violate provisions of the *Code* through abuse of alcohol and other substances.  Behaviors that are detrimental to the learning environment and/or damaging to the reputation of the College (whether occurring on or off of college property) will not be tolerated.  These include but are not limited to intentionally causing physical injury to self or others; the use of threats, harassment or intimidation; the verbal abuse of any other person; actions that result in bodily harm and sexual misconduct, sexual harassment, intimidation or assault, including rape. The provisions of the *Code,* presented at Article VI below, define the full circumstances under which violations of the *Code* occur.  Persons who are found to be repeat offenders will be subject to increasing penalties, with the possibility of suspension or dismissal from the College.

The code has been approved by the College Council with the advice of the President and the College Senate.

## II.  Title

The code is titled, Buffalo State College *Code of Student Rights, Freedoms and Responsibilities*.

## III. Authorization for Establishment of the Code

Section 356, Education Law of the State of New York delegates to the Board of Trustees of the State University of New York authority to establish rules and regulations governing the operation of collegiate units.  Within this authority, the Council for Buffalo State College is authorized to 1) make regulations governing the conduct and the behavior of students (Section 356, item G); 2) establish appropriate regulations, and 3) exercise supervision over student housing and safety (Section 356, item H).

## IV. Definitions The following terms, when used with reference to the Code of Student Conduct, are defined as follows:

A.  College: The term "college" refers to Buffalo State College.

B.  College Property: The term "college property" refers to all property owned, leased or on loan to the college and/or to college organizations.  Such organizations include, but are not limited to, United Students' Government Inc., The Research Foundation of the State University of New York, and Auxiliary Services.

C.  College Document: The term "college document" refers to any college record, official communication or form.

D.  Personal Property: The term "personal property" refers to anything of value to which a person has possession or title.

E.  College Council: The term "college council" refers to a council for the State University College at Buffalo as provided by Section 356 of the Education Law. (Refer to the most recent issues of the Policies of the Board of Trustees.)

F.  Designated College Official: The term "designated college official" refers to a person who is employed by the college and authorized to perform in a prescribed manner.

G.  College Staff: The college staff includes college employees not classified as faculty, by Article II of the Policies of the Board of Trustees.

H.  Faculty: The term "faculty" includes members of the academic staff employed by the college to conduct instruction, research and other service programs. (Specific responsibilities are stated in the Policies of the Board of Trustees.)

I.  College Senate: The term "college senate" is defined in Article III of the By-Laws of the college (1973) as to the governance body of the college with respect to such matters as curriculum, instruction and research, professional welfare of the faculty, budget and staff allocation, student welfare, standards for students, international education, by-laws and elections and academic planning.

J.  Student: The term "student" includes all persons registered for course(s) at the State University of New York College at Buffalo, both full and part time, pursuing undergraduate or graduate studies.

K.  Student Organization: The term "student organization" means a group or association of students with a specific purpose which has complied with the formal requirements for recognition by the student government and/or the college,

L.  Trustees: The term "trustees" refers to the Board of Trustees of the State University of New York as defined by Section 356 of the State Education Law.

M.  Institution.  The term "institution" shall mean any college or university chartered by the regents or incorporated by special act of the legislature that maintains a campus in New York.

N.  Title IX Coordinator.  The term "Title IX Coordinator" shall mean the Title IX Coordinator and/or his or her designee or designees.

O. Bystander.  The term "Bystander" shall mean a person who observes a crime, impending crime, conflict, potentially violent or violent behavior, or conduct that is in violation of rules or policies of an institution.

P. Code of Conduct. The term "Code of Conduct" shall mean the written policies adopted by an Institution governing student behavior, rights, and responsibilities while such student is matriculated in the Institution.

Q. Confidentiality.  "Confidentiality" may be offered by an individual who is not required by law to report known incidents of sexual assault or other crimes to institution officials, in a manner consistent with State and Federal law, including but not limited to 20 U.S.C. 1092(f) and 20 U.S.C. 1681(a). Licensed mental health counselors, medical providers and pastoral counselors are examples of institution employees who may offer confidentiality.

R. Privacy.  "Privacy" may be offered by an individual when such individual is unable to offer confidentiality under the law but shall still not disclose information learned from a reporting individual or bystander to a crime or incident more than necessary to comply with this and other applicable laws, including informing appropriate Institution officials.  Institutions may substitute another relevant term having the same meaning, as appropriate to the policies of the Institution.

S. Accused. The term "Accused" shall mean a person accused of a violation who has not yet entered an Institution's judicial or conduct process.

T. Respondent.  The term "Respondent" shall mean a person accused of a violation who has entered an Institution's judicial or conduct process.

U. Reporting Individual. The term "Reporting Individual" shall encompass the terms victim, survivor, complainant, claimant, witness with victim status, and any other term used by an institution to reference an individual who brings forth a report of a violation.

V. "Sexual activity" shall have the same meaning as "sexual act" and "sexual contact" as provided in 18 U.S.C. 2246(2) and 18 U.S.C. 2246(3).

W. "Domestic violence", "dating violence", "stalking" and "sexual assault" shall be defined by each Institution in its Code of Conduct in a manner consistent with applicable federal definitions.

## V. Student Rights and Freedoms

### A. Freedom of Government

Students have the right to organize and maintain democratic self-government.

### B. Academic Freedom and Responsibilities

Students have the right to be informed of and are responsible for maintaining the standard of academic performance expected of them in each class and/or program in which they are enrolled.  Students have the right to take reasoned exception with the data or views offered in any course of study and to hold differing opinions without fear of prejudiced or capricious academic evaluation.

### C. Freedom of Expression and Inquiry

Students and student organizations have the right to meet, engage in discussion, pass resolutions, distribute leaflets, circulate petitions, invite speakers and take other action by orderly means which does not disrupt the operation of the institution.  Except as proscribed herein, they are free to express opinions publicly or privately.

### D.  Freedom of Communication Media

Student communication organizations are to be free of censorship and advance approval of copy.  Student editors and managers are free to develop editorial policies and news coverage in accordance with generally accepted standards of responsible journalism.  Such public expressions are to be taken only as the work and opinions of their author(s).

### E.  Freedom of Association

Students are free to organize and join associations for educational, political, social, religious or cultural purposes, as consistent with law.

### F.  Freedom from Disciplinary Action Without Due Process

No sanction or other disciplinary action shall be imposed on a student by or in the name of the college without due process.  This document defines due process at the college.

### G.  Freedom from Improper Disclosure

Information about student views, beliefs and political associations which faculty and college staff may acquire in the course of their duties at the college are to be considered confidential.  Judgments of ability and character may be expressed in appropriate circumstances (e.g., letters of recommendation).

### H.  Right to Privacy

Students are protected from invasion of privacy and searches of their residences, except where a court ordered search warrant has been legally obtained or where permitted by the campus residence hall license or in the case of a danger to health or safety.

### I.  Freedom from Prejudice

Students have a right to be free from prejudice based on race, creed, sex, religion, ethnicity, sexual orientation, disability or age.

### J.  Right to be Informed

The college has the obligation to inform all students, within a reasonable time, of their rights, freedoms and responsibilities.  Additionally, the college has the obligation to provide both complainants and those accused of violations, within a reasonable time, a set of documents that clearly outlines the alleged violation, campus judicial process, possible sanctions, student advocacy rights and a list of available college and community support services.

### K.  Student Bill of Rights

The State University of New York and Buffalo State are committed to providing options, support and assistance to victims/survivors of sexual assault, domestic violence, dating violence, and/or stalking to ensure that they can continue to participate in Buffalo State and SUNY-wide programs, activities, and employment. All victims/survivors of these crimes and violations, regardless of race, color,

national origin, religion, creed, age, disability, sex, gender identity or expression, sexual orientation, familial status, pregnancy, predisposing genetic characteristics, military status, domestic violence victim status, or criminal conviction, have the rights enumerated under Section IV of the Sexual Violence Addendum to the code of conduct, regardless of whether the crime or violation occurs on campus, off campus, or while studying abroad.

## VI. Violations of the Code of Rights, Freedoms and Responsibilities for Students

**While on college property, while attending college-sponsored activities, or off campus where a definite, legitimate and substantial college interest exists, no student, either singly, or in concert with others, shall:**

### A.  Persons

1. intentionally cause physical injury to self or others, threaten, harass, intimidate or verbally abuse any other person.
2. take any action for the purpose of inflicting bodily harm upon any person or take any action with such reckless disregard that bodily harm might result.
3. engage in sexual misconduct in any form.  Sexual misconduct allegations are addressed under the provisions detailed in the Sexual Violence Addendum to the Code
4. engage in hazing, stalking, harassment or threats of violence based on, but not limited to, a person's race, ethnicity, national origin, religion, creed, sexual orientation, disability, age or gender.  Examples of hazing include, but are not limited to:  paddling or other physical abuse or brutality; activities that involve illegal acts of excessive fatigue and/or stress; verbal and/or psychological abuse that compromises the dignity of individuals.
5. physically restrain or detain any person or remove such person from any place where he/she is authorized to remain.
6. obstruct the free movement of persons and college-owned and/or operated vehicles on the college property.
7. without appropriate permission enter into a private office of an administrator, faculty or staff member or student organization.
8. disrupt or prevent the peaceful and orderly conduct of classes, lectures and meetings or interfere with the freedom of any persons, including invited speakers, to express their views.
9. interfere with or disrupt any college office, classroom or activity through any means including the excessive use of amplified sounds or other electronic equipment.
10. vandalize, damage or destroy personal property of another individual.
11. remove or use another individual's personal property without authorization.
12. practice any form of dishonesty, including cheating, plagiarism, or furnishing false information to the college.

### B.  College Property

1. vandalize, damage, misuse or destroy college property.
2. take college property such as supplies, equipment, services or documents without authorization.
3. misuse college supplies, services or documents.
4. misuse college property such as computer services, computer time, telephones, fax machines, and college or student records.
5. camp on college property without authorization by appropriate officials.

6. forge, transfer, alter or misuse any student record, identification card or other college document.

### C. Safety

1. fail to comply with a directive by a designated college official who has duly identified him/herself and is acting in performance of his/her duties on college property.
2. enter and remain in any building or facility for any purpose other than its authorized use or in such manner as to obstruct its authorized use by others.
3. without authorization remain in any building or facility after it is normally closed.
4. refuse to leave any building or facility after being directed to do so by an authorized college official.
5. have in his/her possession on college property a rifle, shotgun, pistol, revolver or other firearm, an air gun, BB gun, paintball gun or any other replica of a firearm, instrument or weapon in which the propelling force is air or carbon dioxide, knife, club, slingshot, or other thing adaptable to the purpose of a weapon without the written authorization of the chief administrative officer, whether or not a license to possess same has been issued to such person.
6. use or have in his/her possession on college property any fireworks without the written authorization of the chief administrative officer.
7. possess, sell, use or distribute illegal drugs on college property or off campus where a nexus between the off campus location and the college exists under this code. (This includes possession, use, sale and/or distribution of alcoholic beverages other than in authorized areas and to persons at least 21 years of age.)
8. smoke or use tobacco products, including electronic smoking devices, anywhere on college property.
9. make a false report of a bomb, fire or other emergency in any building, structure or facility on college property.
10. alter or make unwarranted use of firefighting equipment, safety devices or other emergency safety equipment.
11. have animals in the residence halls or other college buildings without written authorization from appropriate college officials.  (Assistant dogs are permitted as needed for those with physical impairment.)
12. leave animals unleashed or otherwise unattended on college property.
13. violate college parking and driving regulations. (Parking is prohibited at all times on roadways, sidewalks, lawns, grounds, lanes and throughways of parking areas except as posted.  The college may have illegally parked vehicles towed away, the expense of which will be borne by the violator. Vehicles may be towed if they have acquired excessive parking violations.) Violations of this section are referred to the Traffic Appeals process.  Students are notified of the appeals process through the Traffic Office.  The determination of the hearing officer is final.
14. drive motorcycles, snowmobiles or other mechanized vehicles on college property other than on provided roadways. (Aids to the disabled are exempted.)
15. violate the rules and regulations governing residence halls as stated in the most recent edition of residence hall policies..
16. violate the guidelines established in the Residence Hall License agreement.
17. violate the established rules and regulations governing registered student activities. (Guidelines pertaining to registration of activities, use of campus facilities and organizational responsibilities are available from the Student Life Office.)
18. fail to keep the Records and Registration Office informed of his/her current mailing address and any change thereof.
19. incite any other person(s) to commit any of the acts herein prohibited.

**D. Other**

For disciplinary action to be taken against a student for violation of a federal, state or local criminal statute, a definite relationship between the statutory violation and the college's rules and regulations must exist.  The violation of a statute or conviction off campus must be shown to be such that it justifies action by the College Court.

## VII.   Judicial System

**A.  Jurisdiction and Double Jeopardy**

The college judicial system's functions are to respect the rights of both complainants and accused students and to render fair judgments.  It is not bound by the technical and formal rules of evidence.

The college judicial system has original jurisdiction in matters concerning infractions and violations of the Code of Student Rights, Freedoms, and Responsibilities.  Enforcement of college rules and regulations does not constitute double jeopardy even when students are charged with violation of state or federal laws as well as with violation of college rules and regulations.

**B.**  The Judicial System of the State University College at Buffalo is comprised of the following positions appointed by the president or his/her designee and fulfill the following functions:

**1.**     **Director:** The Director shall be the Dean of Students or his/her designee.  He/she will:

  a.  train judicial board members, appeals board members and advocates for students.
  b.  organize judicial hearings.
  c.  initiate consultations between affected students and advocates for students.
  d.  ensure adherence to college judicial procedures and, whenever possible, attend judicial board hearings.
  e.  organize appeals board meetings.
  f.  whenever possible, informally resolve grievances, disputes and accusations in accordance with the limitations and procedures stipulated in VIII.D. of this document.
  g.  ensure compliance with the findings of the judicial board.
  h.  prepare an annual report to be made available to the college community at the beginning of the subsequent academic year.  This report will:

  • provide statistical data on the number of hearings and the sanctions imposed for specific violations, and
  • document the participation and college service of judicial board members and advocates for students.

**2.     Advocate for Students**

The Advocate for Students will be drawn from a list of faculty and/or staff members selected and trained by the Director.

Advocates for students will advise affected students of their rights and responsibilities, resources that are available to them, and college judicial procedures preparatory to informal resolution or a judicial hearing.

Case 1:24-cv-00150   Document 1-1   Filed 02/16/24   Page 71 of 132

3.   **Judicial Boards**

   a.   composition and limitations

     1)   The College Court will consist of two Judicial Boards that will be appointed by the President from a list of volunteers recommended by the College Senate for a term of two years.  Students may elect to serve for one or two years.  Each Judicial Board will consist of seven persons, including: three students, two faculty members and two college staff members.  Each board will also consist of two students, one faculty member and one college staff member serving as alternates.  These boards will hear cases on a rotating basis.  Additional boards may be appointed by the president upon recommendation of the director. Board members may serve on either board as deemed necessary by the Director.

     2)   The following persons may not serve on the judicial boards: the Dean of Students, University Police officers and staff, staff members of the Office of Residence Life, and the Office of Student Life, its student interns and resident assistants.

     3)   Any board member who has a personal or professional interest in the outcome of a case must disqualify him/herself from hearing that case. Where the director has reason to suspect that such an interest exists, the director must request the board member to disqualify him/herself and inform the board of that request.  A simple majority of the board may elect to exclude a board member from participating where the board believes a personal or professional interest exists.

     4)   A quorum shall consist of five members, including the chairperson, at least one of whom must be a student.

   b.   Judicial boards will:

     1)   hear and evaluate charges and evidence.
     2)   question participants on matters directly germane to the case.
     3)   make judgments of guilt or innocence.
     4)   make final determinations of sanctions in cases of guilty verdicts.

4.   **Judicial Board Chair(s)**: The Judicial Board Chair position shall be filled by college faculty and professional staff drawn from the judicial board pool and serving on a rotating basis.  Judicial board chairs will:

     1)   chair hearings: formally present charges to the board and ensure the orderly and thorough presentation of necessary evidence, participate in board discussion and vote on guilt or innocence.
     2)   inform the accused of the judgment of the judicial board. (Interim suspension, suspension and expulsion can be imposed only by the college president.)

5.   **Appeals Board**

   a.   Composition:  Members of the appeals board will consist of five members, as follows:
     1.   One faculty member, one staff member , two students, one member of the College Council
     2.   The chair of the appeals board shall be appointed by the president for a two year term from the faculty or staff members of the appeals board.  The chair

formally presents all information on the case being appealed, participates in board discussion, and votes on all matters before the board.

3. Members of the Appeals Board will be appointed from a list of volunteers for a term of two years by the college president upon the recommendation of the College Senate except that College Council members will be appointed by the chairman of the College Council.  Students may elect to serve for one or two years.

4. A quorum shall consist of three members, including the chairperson, at least one of whom must be a student.

   b.  The appeals board will:

1. Determine which cases will be granted appeals.
2. Review such cases.
3. Where deemed appropriate, allow students who have received guilty verdicts to personally address the board and answer questions posed by members of the appeals board.
4. In cases where sexual misconduct is alleged, the appeals board will, where deemed appropriate, allow complainants who wish to challenge the results of a hearing to personally address the board and answer questions posed by members of the appeals board.
4. Where deemed appropriate, vacate convictions in verdicts and/or reduce sanctions.
5. Where deemed appropriate, grant new hearings.
6. Where deemed appropriate, uphold the decisions of the original hearing board.

## C. Initiating Complaints and Scheduling Hearings

Complaints may be initiated by any member of the college community - student, faculty, and/or staff.  Any complaint concerning a violation of the Code of Student Rights, Freedoms, and Responsibilities should be made or referred to the director of the college judicial system as soon as practicable but no later than the end of the semester after the incident occurred.  All complaints must be filed in writing, dated and signed by the complainant(s).  If it is determined by the director that the complaint is within the jurisdiction of the judicial board and no informal resolution can be made, a hearing shall be scheduled.  Both the complainant(s) and accused shall be notified by   email to their official college email address, at least two weeks before the hearing date.  The hearing will be concerned only with the allegations written in the complaint.

In cases where sexual misconduct is alleged, the complainant and accused shall, upon request of either party, be separated from view of each other during the course of a hearing, such that both parties and the hearing board are able to hear each other.

Judicial board hearings are normally held on either Tuesday or Thursday between 12:15 and 1:30 PM.

## D. Informal Resolution

1. An informal resolution is an agreement negotiated by the director of the judicial system and the accused.  Where an informal resolution is not possible, a formal hearing must be held.

2. Informal resolution may not result in interim suspension, suspension, or dismissal from the college.

3. The Campus Mediation Service provides an additional method for informal resolution permitting students through the assistance of trained mediators to decide a workable solution between and among themselves. Involved students may be asked to participate in a conflict management workshop.

4. Cases involving violations of this code and/or the guidelines established in the Residence Hall License Agreement may be considered for informal resolution except as otherwise noted. Those emanating from residence hall grievances, disputes, and accusations may be referred to the residence halls' judicial system for informal resolution at the discretion of the director. The following are excepted from informal resolution:

   a. sexual harassment, intimidation, or assault on any person, including rape, regardless of the nature of the relationship between the persons involved. (VI.A.1.c.)

   b. disruption or prevention of the peaceful and orderly conduct of classes, lectures and meetings or interference with the freedom of any person, including invited speakers, to express their views. (VI.A.5.)

   c. forgery, transfer, alteration or misuse of any student record, identification card or other college document. (VI.B.6.)

   d. false report of a bomb, fire or other emergency in any building, structure or facility on college property. (VI.C.9.a.)

## E. Hearing the Case

Accused students and complainants may each bring an advisor of their choice at their own expense. This person may assist them during the hearing. The advisor takes no direct part in the proceedings, unless permitted to do so by the chair although he or she may advise students during the proceedings All hearings are closed to the public. Only individuals directly concerned with the extant case may be present during a hearing; e.g., complainant(s), witnesses, the accused, advisor(s). Observers are not allowed. It is the responsibility of both the accused student(s) and complainant(s) to notify witnesses of the time and place of the judicial hearing. Complainants and accused students are responsible for presenting their cases, with the assistance of an advisor if desired and have the right to present witnesses on their behalf and to ask questions of witnesses presented by the opposing party or parties. No evidence other than that received at the hearing may be considered by the hearing board. Written statements by anyone not present at the hearing are not acceptable.

## F. Decisions

The hearing board will determine the responsibility of the student(s) accused by a simple majority plus one vote of those present during the entire hearing. Judgment shall be based solely upon the evidence presented at a hearing. In cases where sexual misconduct is alleged, judgment shall be based solely upon a preponderance of the evidence presented at the hearing and the provisions of the Sexual Violence Addendum will apply. In the case of a "responsible" decision, short of suspension or dismissal from the college, the hearing board shall determine the sanction. Sanctions will be determined by a simple majority vote. Past disciplinary records may be taken into consideration.

The chairperson shall present the decision of the hearing board to the accused student and summarize the reasons for the decision. A student found in violation of this code will be asked to sign a statement indicating that he/she understands the ruling. Signing this statement does not necessarily indicate agreement with the decision.

Both the accused student and the complainant must be informed as soon as practicable but no later than 30 days after the outcome of any institutional disciplinary proceeding brought alleging violation of the code. The outcome of a disciplinary proceeding represents only the institution's final determination with respect to the alleged offense and any sanction that is imposed against the accused student.

**G. Sanctions**

It is the responsibility of the student to complete sanctions within the required time period. A student found in violation of this code must return to the director of the college judicial system, the "Completion of Sanction" form signed by the appropriate individuals. Failure to complete sanctions may result in an official "hold" placed on all permanent records of a student and/or further charges being brought.

In the event of non-compliance with an order of suspension or dismissal, University Police will be responsible for ensuring enforcement. The following sanctions may be imposed upon an individual, or student organization, if found guilty of one of the specified violations:

1. **Reprimand or warning**: Written notice that continuation or repetition of the violation within a period of time stated in the warning may be a cause for more severe disciplinary action.

2. **Social probation**: Restriction from participation in specified college/sponsored activities, events, or use of specified college facilities.

3. **Restitution:** Reimbursement for damage or misuse of property.

4. **College or community service**: In consultation with the Dean of Students, individuals may be assigned appropriate community or college service. Such service may not exceed 40 hours and may not conflict with the student's religious or ethical views.

5. **Disciplinary probation**: Status of student is declared probationary for a specific period of time which shall not be less than three months nor more than one calendar year. Further violation of recognized rules and regulations may warrant immediate suspension or expulsion from the college. This sanction precludes the individual from representing the college in an official capacity such as intercollegiate athletics or student office, and it may include the loss of specific privileges.

6. **Suspension or dismissal:** The hearing board may recommend to the college president that a student found in violation of this code be suspended or dismissed from the college. Students dismissed from the College as a result of violations of the *Code* shall not receive credit for the semester in which the expulsion occurred and will be liable for all tuition and fees for that semester.

7. **Interim suspension:** The college president may suspend a student pending a hearing and determination thereof, whenever: in his/her considered judgment the continued presence of such student would constitute a clear danger to him/herself or to the safety of persons or property or would pose an immediate threat of disruptive interference with the normal conduct of the institutions' activities and functions, provided, however, that the president shall grant a hearing , within a reasonable period, on the request of any student so suspended with respect to the basis for such suspension. During this period of such a suspension, the student shall not, without prior permission of the president or his/her designated representative, enter or remain on the campus of the State University College at Buffalo other than to attend the hearing. Violation of any condition of the interim suspension shall be grounds for dismissal from the college. The student must leave the campus within 48 hours of notification of the suspension or expulsion unless an

appeal is granted or an extension is approved by the college president or his/her designee. The suspended or expelled student may not visit the campus unless prior permission by the college president or his/her designee is given.

8. **Sexual Misconduct Sanctions**: Sanctions for students found responsible for sexual misconduct violations are listed under the Sexual Violence Addendum to the Code.

9. **Sanctions for Residence Hall Related Violations**:

   A. **Residence hall probation.** A student's resident status is declared probationary for a specified period of time. Residence hall probation is a strict warning against further violation(s) of residence hall/college policies. Further violations may result in loss of a student's license to live on campus.

   B. **Imposed reassignment.** A resident student will be reassigned to an available space on campus to be determined by the judicial hearing board and director of residence life. The student will be required to move to the new assignment within a specified and reasonable period of time or be subject to immediate suspension from the residence halls.

   C. **Suspension/expulsion from the residence halls.** The student will be required to vacate the residence halls for a reasonable specified period. The student may apply to the director of residence life or his/her designee to be readmitted to the residence halls following a period of suspension. Any individual under suspension or expulsion from the residence hall is prohibited from entering any residence hall without explicit permission, in writing, from the director of residence life of his/her designee.

**H. Transcript Notation**

1. Effective June 1, 2004, Buffalo State College will indicate a permanent notation on the official college transcript of any student that is dismissed as a result of either serious and/or repeated violations of the *Code of Student Rights, Freedoms and Responsibilities.*

2. For crimes of violence, including, but not limited to sexual violence, defined as crimes that meet the reporting requirements pursuant to the federal Clery Act[1] established in 20 U.S.C. 1092(f)(1)(F)(i)(I)-(VIII), institutions shall make a notation on the transcript of students found responsible after a conduct process that they were "suspended after a finding of responsibility for a code of conduct violation" or "expelled after a finding of responsibility for a code of conduct violation." For the respondent who withdraws from the institution while such conduct charges are pending, and declines to complete the disciplinary process, institutions shall make a notation on the transcript of such students that they "withdrew with conduct charges pending."

   a. Students may submit an appeal to the Dean of Students seeking removal of a transcript notation for a suspension, provided that such notation shall not be

---

[1] Violations equivalent to the Clery Act (as updated by the Violence Against Women Act Final Regulations) Part I crimes covered under the legislation that would require a transcript notation are: murder; rape, fondling, incest and statutory rape; robbery; aggravated assault; burglary; motor vehicle theft; manslaughter; and arson. Institutions may, but are not required to, include transcript notations for additional violations.

removed prior to one year after conclusion of the suspension, while notations for expulsion shall not be removed.  If a finding of responsibility is vacated for any reason, any such transcript notation shall be removed.

## I.  Absence of Accused Student

If the accused student does not appear at the hearing and if it has been determined that the accused student did receive the required notice of the hearing, the case will be heard in his/her absence and a decision will be rendered by the judicial board.

## J.  Absence of the Complainant

If the complainant does not appear at the hearing and if it has been determined that the complainant did receive the required notice of the hearing, the case may be dismissed.

## K.  Absence of Quorum

In the event that a quorum of the hearing board is not present, the hearing will be rescheduled.  The rescheduled hearing will take place within ten days of the first hearing date.

## L.  Reporting Decisions

A written report of the findings of the judicial hearing and the sanctions, imposed or recommended, by the board, shall be prepared by the chairperson and forwarded to the director of the college judicial system, the vice president for student affairs and, where necessary, the college president.

## M.  Appeals

1.  Any student found in violation of the rules and regulations of the Code of Rights and Responsibilities has the right to request an appeal of any decision made by a judicial hearing board.

2.  In cases where sexual misconduct is alleged, both the complainant and the victim have the right to request an appeal of any decision made by a judicial hearing board.

3.  An appeal must be made in writing to the director of the judicial system within ten **(10)** days of receiving notification of the outcome of the hearing.  An appeal must include the specific reason(s) for the request: procedural error, inappropriate application of college regulations, presence of new information, or the leniency or severity of sanctions imposed.  Appeals may include requests to personally address the appeals board. The appeals board shall first determine whether or not an appeal will be granted.  If granted, the appeals board shall schedule a hearing.  In cases where an error is found or there is compelling new evidence, the appeals board shall set aside the original decision and either enter its own judgment or recommend a new hearing. The appeals board may elect to request to speak directly with complainants, witnesses or student (s) accused.

4.  All sanctions imposed shall be considered in effect until/unless reversed by the Appeals Board.  The decision of the appeals board is final.

5.  Reporting Decisions:  The appeals board shall follow the same procedure as the judicial hearing board.

**N.  Judicial Records**

1.  Student records, including files, taped proceedings and testimony of cases heard before the judicial hearing board are confidential.
2.  College guidelines concerning the confidentiality of student records in accordance with the "Family Educational Right and Privacy Act (PL 93-380) of 1974," as amended, shall be followed.

**O. Non-Retaliation Policy**

Both complainants and accused students are prohibited from engaging in any form of retaliatory action against the other party, any witness at a hearing, members of the hearing or appeals boards, judicial affairs staff or any other party associated with the complaint.

# VIII. Revisions and/or Amendments

All revisions and/or amendments to the Code of Student Rights, Freedoms, and Responsibilities must be approved by the College Council with the advice of the president and the College Senate.

*Revised September, 2015*

**Buffalo State College**

*Code of Student Rights, Freedoms and Responsibilities*

# Sexual Violence Addendum

---

*Approved by the College Council, February 24, 2015
and Revised to Comply with NYS "Enough is Enough" Law
September, 2015*

## Buffalo State College
## Code of Student Rights, Freedoms, and Responsibilities

### *Sexual Violence Addendum*

**I.        Introduction**

Buffalo State strives to create a campus community which is intolerant of sexual violence.  Sexual violence is a violation of college policy and federal civil rights law and may also be subject to criminal prosecution.  The College is committed to fostering a community that promotes prompt reporting of sexual violence and timely and fair resolution of sexual violence complaints.   Creating a safe and respectful environment is the responsibility of all members of the campus community.  Buffalo State strongly encourages persons who believe they have been a victim of sexual violence to report the incident, to seek assistance, and to pursue judicial action for their own protection and for the entire college community.


Buffalo State provides due process to students accused of sexual violence.  This Addendum is designed to uphold these principles, while also ensuring a complainant's protections under Title IX and SUNY Policies on Sexual Violence Prevention and Response.  Nothing in this Addendum is intended to abridge any student's rights.  Those accused shall be subject to appropriate campus due process (judicial processes, disciplinary action) and/or criminal proceedings if the victim pursues a criminal complaint.

**II. Definition of Violations**

Sexual violence, as that term is used in this document and prior U.S. Office for Civil Rights guidance, refers to physical sexual acts perpetrated against a person's will or where a person is incapable of giving consent (as defined by the affirmative consent policy included herein).  A number of different acts fall into the category of sexual violence, including rape, sexual assault, sexual battery, sexual abuse, and sexual coercion.  Sexual violence can be carried out by other students, college employees, or third parties. All such acts of sexual violence are forms of sex discrimination prohibited by Title IX.

Student Judicial and Appeals Boards will consider alleged violations using the definitions listed in this section. In compliance with SUNY policy, hearing boards will apply the following definition to determine whether consent was present:

Affirmative Consent:

Affirmative consent is a knowing, voluntary, and mutual decision among all participants to engage in sexual activity. Consent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity. Silence or lack of resistance, in and of itself, does not demonstrate consent. The definition of consent does not vary based upon a participant's sex, sexual orientation, gender identity, or gender expression.

> a) Consent to any sexual act or prior consensual sexual activity between or with any party does not necessarily constitute consent to any other sexual act.

> b) Consent is required regardless of whether the person initiating the act is under the influence of drugs and/or alcohol.

> c) Consent may be initially given but withdrawn at any time.

d) Consent cannot be given when a person is incapacitated, which occurs when an individual lacks the ability to knowingly choose to participate in sexual activity. Incapacitation may be caused by the lack of consciousness or being asleep, being involuntarily restrained, or if an individual otherwise cannot consent. Depending on the degree of intoxication, someone who is under the influence of alcohol, drugs, or other intoxicants may be incapacitated and therefore unable to consent.

e) Consent cannot be given when it is the result of any coercion, intimidation, force, or threat of harm.

f) When consent is withdrawn or can no longer be given, sexual activity must stop.

g) Consent cannot be given if any of the parties are under the age of 17 or otherwise cannot consent.

Sexual Misconduct Violations:

A. Non-consensual sexual contact: Any intentional sexual touching by a man or a woman upon a man or a woman that is without consent and/or by force.

B. Retaliation: adverse action against another person for reporting a violation or for participating in any way in the investigation or conduct process. Retaliation includes harassment and intimidation, including but not limited to violence, threats of violence, property destruction, adverse educational or employment consequences, and bullying.

C. Sexual exploitation: Occurs when a student takes non-consensual or abusive sexual advantage of another for his/her own advantage or benefit, or to benefit or advantage anyone other than the one being exploited, and that behavior does not otherwise constitute one of the other sexual misconduct offenses. Examples of sexual exploitation include, but are not limited to:
- Invasion of sexual privacy
- Prostituting another student
- Non-consensual video or audio-taping of sexual activity;
- Going beyond the boundaries of consent (such as letting your friends hide in the closet to watch you having consensual sex);
- Engaging in voyeurism;
- Knowingly transmitting an STI or HIV to another student;
- Exposing one's genitals in non-consensual circumstances;
- Inducing another to expose their genitals;
- Sexually-based stalking and/or bullying may also be forms of sexual exploitation

D. Sexual assault: Sexual assault is defined to be a Code of Conduct violation consistent with the Federal definition of rape adopted by the Department of Education in Final Regulations (http://www.gpo.gov/fdsys/pkg/FR-2014-10-20/pdf/2014-24284.pdf, page 62789), from the Uniform Crime Reporting system of the Federal Bureau of Investigations. "The penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim." Consent for these purposes is the consent definition in these policies and the legislation.

**For students found responsible for sexual assault, the available sanctions are suspension with additional requirements and expulsion/dismissal.**

E. Sexual harassment: unwelcome, gender-based verbal, non-verbal, or physical conduct that is sexual in nature and sufficiently severe, persistent, or pervasive that it unreasonably interferes with, denies, or limits

Case 1:24-cv-00150   Document 1-1   Filed 02/16/24   Page 81 of 132

someone's ability to participate in or benefit from the University's educational program and/or activities, and is based on power differentials, the creation of a hostile environment, or retaliation.

F.   Sexual violence: physical sexual acts perpetrated against a person's will or perpetrated where a person is incapable of giving consent. A number of different acts fall into the category of sexual violence, including rape, sexual assault, sexual battery, sexual abuse, and sexual coercion.

G.   Stalking: intentionally engaging in a course of conduct, directed at a specific person, which is likely to cause a reasonable person to fear for his or her safety or the safety of others or cause that person to suffer substantial acts that alarm, cause fear, or seriously annoy such other person(s) and that serve no legitimate purpose, and repeatedly communicating by any means, including electronic means, with such person(s) in a manner likely to intimidate, annoy, or alarm him/her.

### III.     Policy for Alcohol and/or Drug Use Amnesty in Sexual and Interpersonal Violence Cases

The health and safety of every student at the State University of New York and its State-operated and community colleges is of utmost importance. Buffalo State recognizes that students who have been drinking and/or using drugs (whether such use is voluntary or involuntary) at the time that violence, including but not limited to domestic violence, dating violence, stalking, or sexual assault occurs may be hesitant to report such incidents due to fear of potential consequences for their own conduct. Buffalo State strongly encourages students to report incidents of domestic violence, dating violence, stalking, or sexual assault to campus officials. A bystander acting in good faith or a reporting individual acting in good faith that discloses any incident of domestic violence, dating violence, stalking, or sexual assault to Buffalo State officials or law enforcement will not be subject to Buffalo State's code of conduct action for violations of alcohol and/or drug use policies occurring at or near the time of the commission of the domestic violence, dating violence, stalking, or sexual assault.

### IV.     Students' Bill of Rights

The State University of New York and Buffalo State are committed to providing options, support and assistance to victims/survivors of sexual assault, domestic violence, dating violence, and/or stalking to ensure that they can continue to participate in Buffalo State and SUNY-wide programs, activities, and employment. All victims/survivors of these crimes and violations, regardless of race, color, national origin, religion, creed, age, disability, sex, gender identity or expression, sexual orientation, familial status, pregnancy, predisposing genetic characteristics, military status, domestic violence victim status, or criminal conviction, have the following rights, regardless of whether the crime or violation occurs on campus, off campus, or while studying abroad:

All students have the right to:

1.   Make a report to local law enforcement and/or state police.

2.   Have disclosures of domestic violence, dating violence, stalking, and sexual assault treated seriously.

3.   Make a decision about whether or not to disclose a crime or violation and participate in the judicial or conduct process and./or criminal justice process free from pressure from the institution.

4.   Participate in a process that is fair, impartial, and provides adequate notice and a meaningful opportunity to be heard.

5.   Be treated with dignity and to receive from the institution courteous, fair, and respectful health care and counseling services, where available.

6.  Be free from any suggestion that the reporting individual is at fault when these crimes and violations are committed, or should have acted in a different manner to avoid such crimes or violations.

7.  Describe the incident to as few institutional representatives as practicable and not to be required to unnecessarily repeat a description of the incident.

8.  Be free from retaliation by the institution, the accused and/or the respondent, and/or their friends, family and acquaintances within the jurisdiction of the institution.

9.  Access to at least one level of appeal of a determination.

10. Be accompanied by an advisor of choice who may assist and advise a reporting individual, accused, or respondent throughout the judicial or conduct process including during all meetings and hearings related to such process.

11. Exercise civil rights and practice of religion without interference by the investigative, criminal justice, or judicial or conduct process of the College.

## V.    Judicial System and Process

Under the Sexual Violence Addendum, victims/survivors shall have the right to file student conduct charges against the accused. Conduct proceedings are governed by the procedures set forth in this *Sexual Violence Addendum* as well as federal and New York State law, including the due process provisions of the United States and New York State Constitutions. Throughout conduct proceedings, both the accused and the victim/survivor will have:

1.  The same opportunity to be accompanied by an advisor of their choice who may assist and advise the parties throughout the conduct process and any related hearings or meetings.  Participation of the advisor in any proceeding is governed by federal law and the Student Code of Conduct.

2.  The right to a prompt response to any complaint and to have their complaint investigated and adjudicated in an impartial, timely and thorough manner by individuals who receive annual training in conducting investigations of sexual violence, the effects of trauma, impartiality, the rights of the respondent, including the right to a presumption that the respondent is "not responsible" until a finding of responsibility is made, and other issues related to sexual assault, domestic violence, dating violence, and stalking.

3.  The right to an investigation and process conducted in a manner that recognizes the legal and policy requirements of due process (including fairness, impartiality, and a meaningful opportunity to be heard) and is not conducted by individuals with a conflict of interest.

4.  The right to receive advance written or electronic notice of the date, time, and location of any meeting or hearing they are required to or are eligible to attend.  Accused individuals will also be told the factual allegations concerning the violation, a reference to the specific code of conduct provisions alleged to have been violated, and possible sanctions.

5. The right to have a conduct process run concurrently with a criminal justice investigation and proceeding, except for temporary delays as requested by external municipal entities while law enforcement gathers evidence. Temporary delays should not last more than 10 days except when law enforcement specifically requests and justifies a longer delay.

6. The right to offer evidence during an investigation and to review available relevant evidence in the case file (or otherwise held by the College).

7. The right to present evidence and testimony at a hearing, where appropriate.

8. The right to a range of options for providing testimony via alternative arrangements, including telephone/videoconferencing or testifying with a room partition.

9. The right to exclude prior sexual history with persons other than the other party in the conduct process or their own or past mental health diagnosis or treatment from admittance in college disciplinary stage that determines responsibility. Past findings of domestic violence, dating violence, stalking, or sexual assault may be admissible  in the disciplinary stage that determines sanction.

10. The right to ask questions of the decision maker and via the decision maker indirectly request responses from other parties and any other witnesses present.

11. The right to make an impact statement during the point of the proceeding where the decision maker is deliberating on appropriate sanctions.

12. The right to simultaneous (among the parties) written or electronic notification of the outcome of a conduct proceeding, including the decision, any sanctions, and the rationale for the decision and any sanctions.

**13.** The right to written or electronic notice about the sanctions(s) that may be imposed on the accused based upon the outcome of the conduct proceeding.  **For students found  responsible for sexual assault,[2]  the available sanctions are suspension with additional requirements and expulsion/dismissal.**

14. Access to at least one level of appeal of a determination before a panel, which may include one or more students, that is fair and impartial and does not include individuals with a conflict of interest.

15. The right to have access to a full and fair record[3] of a student conduct hearing, which shall be preserved and maintained for at least five years and is available by contacting the office of Judicial Affairs, Campbell Student Union, room 311, telephone 716-878-3501.

---

[2] Sexual assault is defined to be a Code of Conduct violation consistent with the Federal definition of rape adopted by the Department of Education in Final Regulations (http://www.gpo.gov/fdsys/pkg/FR-2014-10-20/pdf/2014-24284.pdf, page 62789), from the Uniform Crime Reporting system of the Federal Bureau of Investigations.  "The penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim."  Consent for these purposes is the consent definition in these policies and the legislation.
[3] The college will allow participants reasonable access during business hours and is specifically not required to provide participants with copies of the record.

16. The right to choose whether to disclose or discuss the outcome of a conduct hearing.[4]

17. The right to have all information obtained during the course of the conduct or judicial process be protected from public release until the appeals panel makes a final determination unless otherwise required by law.

Judicial and Appeals Boards

Judicial and Appeals Boards will be comprised and convened as described in the *Code of Student Rights, Freedoms and Responsibilities*, except as follows*:*

1. Training Requirements:  Members of the Judicial and Appeals Boards must receive annual training in conducting investigations of sexual violence, the effects of trauma, impartiality, the rights of the respondent, including the right to a presumption that the respondent is "not responsible" until a finding of responsibility is made, and other issues related to sexual assault, domestic violence, dating violence, and stalking.

2. Board members must complete sexual violence adjudication training before hearing any sexual violence cases.

3. Absence of Student Board Members:  In the event that all parties involved agree to have a hearing without the presence of student Judicial or Appeals Board members, then additional faculty or staff members will be substituted.  All parties must sign a waiver acknowledging their agreement to this substitution.

Filing a Student Judicial Complaint:

A student judicial complaint form must be completed in writing and submitted to the Director, Office of Judicial Affairs, Campbell Student Union room 311 (telephone 878-3501) in order for the alleged violations to be reviewed under the Code of Conduct.  http://deanofstudents.buffalostate.edu/judicial-affairs

1. Reports or statements made to either University or local police are not provided by those agencies to the Office of Judicial Affairs and do not constitute a judicial complaint.  A separate complaint form must be filed with the Office of Judicial Affairs, or the complainant may choose not to file a judicial complaint at all.
2. Assistance in filing a judicial complaint is available from the Office of Judicial Affairs, the Dean of Students Office, the Counseling Center, or the Office of Equity and Campus Diversity/Title IX Coordinator.

Judicial Process

1. After a written judicial complaint has been filed with the Office of Judicial Affairs, the Director or designee shall meet with the complainant to obtain his/her account of the alleged incident and review

---

[4] Students may not be required to sign a non-disclosure agreement or other document forbidding them from discussing their case.  This applies to respondents and reporting individuals.  Participants are not themselves barred by FERPA from sharing this information.  However, that this does not allow students to unreasonably share private information in a manner intended to harm or embarrass another individual, or in a manner that would recklessly do so regardless of intention.  Such sharing may be retaliation which can result in separate charges under the Code of Conduct.

the College's disciplinary process, including the selection of an advocate as detailed in the *Code of Student Rights, Freedoms, and Responsibilities.*

2. The Office of Judicial Affairs shall notify, in writing, the student(s) accused, reporting the charge(s) made against him/her and providing a copy of the complaint. The Director or designee shall meet with the student (s) accused to explain the charges, the College's judicial process, the factual allegations concerning the violation, a reference to the specific code of conduct provisions alleged to have been violated, and possible sanctions.

3. The student(s) accused shall be given the opportunity to provide a written account of his/her perspective of the act(s) in question to the Office of Judicial Affairs. If a statement is provided it will be disclosed to the complainant and the Hearing Board. This statement must be submitted within three days prior to the hearing.

4. The Judicial Process will run concurrently with any criminal justice investigation and proceeding, if applicable, except for temporary delays as requested by external municipal entities while law enforcement gathers evidence. Temporary delays will not last more than 10 days except when law enforcement specifically requests and justifies a longer delay.

5. In the event that the student accused accepts responsibility, then s/he will be required to sign a statement acknowledging this fact. Depending on the severity of the violations, the Director or his/her designee may either issue sanctions or refer the matter to a Hearing Board.

6. Informal resolution mechanisms set forth in the Code of Conduct will only be used if the parties voluntarily agree to do so.

   a. The complainant will not be required to resolve the problem directly with the accused.

   b. Complainant(s) who agree to informal resolution may, at any time before a final resolution is achieved, refuse such measures and request a formal hearing.

   c. Informal resolution may not be used in cases involving sexual assault as defined in this addendum.

7. Once a judicial complaint has been filed, a hearing will be scheduled at the earliest possible date, and all parties shall be informed in writing of this date no less than ten (10) business days prior. Scheduling of hearings in incidents of alleged sexual violence shall take precedence over less severe cases.

8. The hearing process is detailed in the *Code of Student Rights, Freedoms, and Responsibilities,* except as outlined below.

   a. Parties may be separated during the hearing at the request of either the complainant(s) or the student(s) accused to provide testimony via alternative arrangements, including telephone/videoconferencing or testifying with a room partition.

   b. The victim/survivor's prior sexual history with persons other than the other party in the conduct process or their own past mental health diagnosis or treatment history shall be excluded from admittance in the college disciplinary phase that determines responsibility.

   c. Past findings of domestic violence, dating violence, stalking, or sexual assault may be admissible  in the disciplinary stage that determines sanction.

    d.  Both the victim/survivor and the accused are entitled to make an impact statement during the point of the proceeding where the hearing board is deliberating on appropriate sanctions.

A. <u>Decisions</u>:

**Preponderance of evidence standard:**  The hearing board will determine the responsibility of the student(s) accused by a simple majority plus one (1) vote of those present during the entire hearing.  **In cases where sexual violence is alleged, judgment shall be based solely upon a preponderance of the evidence presented at the hearing.**  Preponderance of evidence asks whether it is "more likely than not" that the sexual harassment or sexual violence occurred.  If the evidence presented meets this standard, then the accused should be found responsible.

Hearing board recommendations are submitted to the Vice President for Student Affairs for review. Upon approval, all parties (complainant/victim, and the student[s] accused) shall be informed in writing of the Judicial Board's decision, as provided under the *Code of Student Rights, Freedoms and Responsibilities*.

B. <u>Notice of Hearing Results</u>

Both the victim/survivor and the accused student shall simultaneously be informed by written or electronic notice of the outcome of the hearing, including the decision, any sanctions, and the rationale for the decision and any sanctions.

C. <u>Appeals</u>:

All appeals processes shall follow the guidelines in the *Code of Student Rights, Freedoms, and Responsibilities,* except as noted below.

1. In cases where sexual violence is alleged, both the complainant and the accused have the right to request an appeal of any decision made by a judicial hearing board which may include one or more students, that is fair and impartial and does not include individuals with a conflict of interest. An appeal must be made in writing to the director of the judicial system within ten (10) days of receiving notification of the outcome of the hearing.  An appeal must include the specific reason(s) for the request: procedural error, inappropriate application of college regulations, presence of new information, or the leniency or severity of sanctions imposed.

2. The non-requesting party will receive notice of the appeal and may submit either his or her own appeal or a written response to the requesting party's appeal within ten (10) days, which the appeals board will consider together.

3. All sanctions imposed shall be considered in effect until/unless reversed by the Appeals Board. The decision of the appeals board is final.

**VI.    Timeline**

The following is a timeline of the major steps in the judicial review process:

A. Student Judicial Hearing:  if a student judicial complaint is submitted, a student judicial hearing will be held as soon as possible but no more than 30 days following receipt of the complaint.

B. Parties Receiving Notice of the Outcome of a Judicial Hearing: both the complainant and the accused will receive notice of the outcome of a judicial hearing as soon as possible but no more than thirty (30) days following the conclusion of the hearing.

C. Parties Filing an Appeal of the Results of a Judicial Hearing: both the complainant and the accused are entitled to an appeal of the results of a judicial hearing. Such an appeal must be submitted within ten (10) days of receipt of notice of the outcome of the judicial hearing.

D. Appeals Hearing and Notice of the Outcome of an Appeal: the appeals board will meet to review appeals as soon as possible once all appeal-related documents have been submitted. Upon the conclusion of the appeal, both the complainant and the accused will receive notice of the outcome within thirty (30) days. The decision of the appeals board is final.

## VII. Sanctions

Sanctioning for sexual violence violations shall follow the guidelines set out in the *Code of Student Rights, Freedoms, and Responsibilities* except as described below.

A. Past findings of domestic violence, dating violence, stalking, or sexual assault may be admissible in the disciplinary stage that determines sanction.

B. Neither mediation nor informal resolutions are appropriate in cases of sexual assault.

**C. For students found responsible for sexual assault,[5] the available sanctions are suspension with additional requirements and expulsion/dismissal.**

## VIII Policies Required by *Enough is Enough* Legislation

**A. Policy for the review of no contact order**
The campus will promptly review existing no contact orders at a party's request, including requests to modify the terms of or discontinue the order. The parties can submit evidence to support their requests. If the campus finds it appropriate, it can even make a schedule for parties who seek to use the same facilities without running afoul of the no contact order.

**B. Policy for review of an interim suspension**
The campus will promptly review existing interim suspensions at a party's request, including requests to modify the terms or discontinue it. Parties can submit evidence to support their request.

**C. Policy for review of interim measures/accommodations**
The campus will promptly review existing interim measures and accommodations at the request of the party who is affected by that interim measure or accommodation. The parties can submit evidence to support their request.

---

[5] Sexual assault is defined to be a Code of Conduct violation consistent with the Federal definition of rape adopted by the Department of Education in Final Regulations (http://www.gpo.gov/fdsys/pkg/FR-2014-10-20/pdf/2014-24284.pdf, page 62789), from the Uniform Crime Reporting system of the Federal Bureau of Investigations. "The penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim." Consent for these purposes is the consent definition in these policies and the legislation.

**D. Policy on transcript notation.**

For crimes of violence, including, but not limited to sexual violence, defined as crimes that meet the reporting requirements pursuant to the federal Clery Act[6] established in 20 U.S.C. 1092(f)(1)(F)(i)(I)-(VIII), institutions shall make a notation on the transcript of students found responsible after a conduct process that they were "suspended after a finding of responsibility for a code of conduct violation" or "expelled after a finding of responsibility for a code of conduct violation." For the respondent who withdraws from the institution while such conduct charges are pending, and declines to complete the disciplinary process, institutions shall make a notation on the transcript of such students that they "withdrew with conduct charges pending." Each institution shall publish a policy on transcript notations and appeals seeking removal of a transcript notation for a suspension, provided that such notation shall not be removed prior to one year after conclusion of the suspension, while notations for expulsion shall not be removed. If a finding of responsibility is vacated for any reason, any such transcript notation shall be removed.

**a.** Students may submit an appeal to the Dean of Students seeking removal of a transcript notation for a suspension, provided that such notation shall not be removed prior to one year after conclusion of the suspension, while notations for expulsion shall not be removed. If a finding of responsibility is vacated for any reason, any such transcript notation shall be removed.

**E. Policy on how parties can review the case file/evidence**

In student disciplinary proceedings involving domestic violence, dating violence, stalking, or sexual violence, the campus will allow parties to review available evidence held by the campus in accordance with college/university policy. Parties can also present available evidence as appropriate under campus policies.

## IX. Non-Retaliation:

All persons are prohibited from engaging in any form of retaliatory action against another party including complainants and student (s) accused, witnesses at a hearing, members of the hearing or appeals board, Judicial Affairs staff or any other person associated with the judicial complaint. Retaliation is considered to be any action that is perceived as intimidating, hostile, harassing, retribution, vengeful, or violent that occurs as a result of a judicial action.

## X. Revisions/ and / or Amendments:

All revisions and/or amendments to this Addendum must be approved by the College Council with the advice of the Buffalo State College President and the College Senate. The Addendum will be regularly reviewed, along with the Code itself, as needed to remain current with changing laws, regulations, and policies.

---

[6] Violations equivalent to the Clery Act (as updated by the Violence Against Women Act Final Regulations) Part I crimes covered under the legislation that would require a transcript notation are: murder; rape, fondling, incest and statutory rape; robbery; aggravated assault; burglary; motor vehicle theft; manslaughter; and arson. Institutions may, but are not required to, include transcript notations for additional violations.

FILED: ERIE COUNTY CLERK 01/30/2024 06:13 PM
INDEX NO. 801516/2024
NYSCEF DOC. NO. 6
RECEIVED NYSCEF: 01/30/2024

# EXHIBIT E

**From:** Zion Treadwell <treadwzw01@mail.buffalostate.edu>
**Sent:** Friday, May 5, 2023 8:45 AM
**To:** pierinng@buffalostate.edu <pierinng@buffalostate.edu>
**Subject:** Zion Treadwell Hearing

Good morning,

I am writing to ask to reschedule my 5/9 hearing.  I would like to reschedule the hearing for a time after final exams are over.  I have been preparing for finals and my sister was also in the hospital for two weeks.  I would appreciate your understanding at this time.

Also, I would like to review any evidence related to my charge, including what was mentioned in the incident report:

1. Video footage of complainant arriving/leaving the dorm
2. Complainant's supplied text messages
3. Results of sex offense evidence kit

In reviewing this evidence, I will be fully prepared for my hearing.  Thank you for your understanding my need to reschedule.

Sincerely,
Zion Treadwell

# EXHIBIT F

March 4th    Interview of victim in Inv. Cahan's office
                                      w/ Inv. Fletcher


~ November   meet
    dating app BLK
    - came here to dorm and had sex


Thursday March 2nd    Zee sexualed victim
Paid UBER   from here to Buffalo State
    Reimbursed   via Cash App
    Dropped keys   go up to 4th floor
    Lets her into   dorm
    went to Z's bed room
    Comes up from behind    2 minutes
    Bent me over   took my pants off
    and put his penis in   my vagina.
    Don't believe he had a condom on.
    ~ 3 minutes
    He stops once he ejaculates n's ze
    Grabs purse and hands off to Nathan and says "you can go now."
    Took UBER home

    FaceTimed   friend (Marianna) once she got home.


March 5th   went to Cheektowaga PD  and then sent them to UPD

## STATE UNIVERSITY COLLEGE AT BUFFALO
## STATE UNIVERSITY POLICE DEPARTMENT
### 1300 ELMWOOD AVENUE, BUFFALO, NY. 14222

**SUPPORTING DEPOSITION**                                    Date  3/5/23
STATE UNIVERSITY POLICE DEPARTMENT

STATE OF NEW YORK
COUNTY OF ERIE                          SS
CITY OF BUFFALO

In the matter of  Zion Treadwell _____, charged with the offence of

_____, in violation of

Section(s) _____ subsection(s) _____
of the Penal Law of the State of New York.
  Ariana Newell _____  of  63 Peach Street _____
  Deponent's Name                              Number and Street

Cheektowaga            NY ____, deposes and says that about   649   A.M. (P.M.)
City      (Town)   Village   State

March     4     2023 , in the City of Buffalo.
Month    Day     Year

Zee texted me around 6 and said wyd I told him I was
at home then he said you should come see me, I said I
don't want to do anything sexual he said I never was going to
do that I just want to hang I said fine he said tell me when
you get here I said oh I uber here at 6:49 and I was
looking for him then he said go to the alley way and he said
look up he threw his keys down and said come to the 4th floor
I came up I walked in his dorm I sat down for 10 second
and my best friend sent me a picture of her dress he stood me up
pulled down my pants and bent me and started being sexual
it lasted for like 2 minutes he gave me my purse and said you can
leave I walked out crying and then started looking for my uber

AN

_____
_____
_____
_____

Signed in the presence of:                Signature of Deponent  Arianna Newell

Rank  PO  UPD                   **NOTICE:** Any false statement(s) made herein are punishable
                                as a Class "A" Misdemeanor, pursuant to Section
Department  BSC - UPD           210.45 of the Penal Law of the State of New York.

(Prepare 3 copies)  Original and 1st copy, attached to Accusatory Instrument, to City Court. 2nd copy for the University Police
Department files.

(INSTRUCTIONS ON THE REVERSE SIDE)

Case 1:24-cv-00150   Document 1-1   Filed 02/16/24   Page 95 of 132

## University Police Dispatch

**From:**       Arianna Newell <Chanelbrown0410@icloud.com>
**Sent:**       Sunday, March 5, 2023 5:10 PM
**To:**         University Police Dispatch
**Subject:**    Arianna Newell


Sent from my iPhone

1



Case 1:24-cv-00150   Document 1-1   Filed 02/16/24   Page 97 of 132





< Back



7:31

< Back

 **Zee**, 23

Nobody said that

I said I wanna chill

Do you know how many times I heard that my ass is not fucking stupid  you want sex bc if you didn't, you would not be texting me right now

FILED: ERIE COUNTY CLERK 01/30/2024 06:13 PM
NYSCEF DOC. NO. 8   Case 1:24-cv-00150   Document 1-1   Filed 02/16/24   Page 100 of 132

INDEX NO. 801516/2024
RECEIVED NYSCEF: 01/30/2024

5:08



< Back

● ● ●


**Zee**, 23

Pull up I'll pay your uber

You think I wanna go over there and just fuck no you don't just text a girl you haven't spoken to in 5 months pull up I'm I'm tired anyway

Wyd

Minding my business

5:09

◀ Snapchat

❮ Back



**Zee**, 23

Minding my business

I'll Uber you to and from, pull

Up

Do I look like a sex toy you not about to hit me up bc you want sex I'm good at home chilling

INDEX NO. 801516/2024




# NEW YORK STATE UNIVERSITY POLICE
### Buffalo State College

## VICTIM OPTION FORM

As a victim of a crime, I have been informed by Off. / Lt. / Inv. _HARVEY_____
of the University Police Department, at Buffalo State College, that I may pursue the following options regarding prosecution of this matter:

1. This matter may be referred to the Campus Judicial System for prosecution.
2. This matter may be referred to the local Criminal Courts for prosecution.
3. This matter may be referred to both the local Criminal Courts and the Campus Judicial System for prosecution.
4. This matter may be referred to the Title IX Officer of Buffalo State College.
5. I do not wish to prosecute this matter.

I have chosen Option Number _____ in handling this matter.

_Arianna Newell_     _Arianna Newell_  3/5/23
Name                 Signature              Date

CD#: 23-001917                                3/5/23
                     Witness                   Date




# NEW YORK STATE UNIVERSITY POLICE
### Buffalo State College

## VICTIM OPTION FORM

As a victim of a crime, I have been informed by Off. / Lt. / Inv. _HARVEY_____
of the University Police Department, at Buffalo State College, that I may pursue the following options regarding prosecution of this matter:

1. This matter may be referred to the Campus Judicial System for prosecution.
2. This matter may be referred to the local Criminal Courts for prosecution.
3. This matter may be referred to both the local Criminal Courts and the Campus Judicial System for prosecution.
4. This matter may be referred to the Title IX Officer of Buffalo State College.
5. I do not wish to prosecute this matter.

I have chosen Option Number _____ in handling this matter.

_Arianna Newell_     _Arianna Newell_  3/5/23
Name                 Signature              Date

CD#: 23-001917                                3/5/23
                     Witness                   Date





**NEW YORK STATE UNIVERSITY POLICE**

Buffalo State
1300 Elmwood Ave, Buffalo, New York 14222
Tel: 716-878-6333 Fax: 716-878-3135
http://police.buffalostate.edu
Peter M. Carey, Chief of Police

## INFORMATION FOR PERSONS REPORTING SEXUAL ASSAULTS TO THE NEW YORK STATE UNIVERSITY POLICE

- The NYS University Police Department (UPD) is required to document and report the time, date, and approximate location of any sexual assault that is reported to us, to the Office of the Vice President of Finance and Management.

- Buffalo State has a coordinated Sexual Assault Protocol that UPD participates.

- Buffalo State and UPD will do our utmost to protect your privacy. Your name and other identifying information will <u>not</u> be released without your consent. An exception to this would be if you or another person was in imminent danger.

- Community notification of the incident <u>may</u> be issued in situations where the community is deemed at risk; you will be informed if this is to happen.

- If you consent to your name being released:

  - UPD can coordinate with selected University offices to help ease your access to services and to avoid having to retell your experience repeatedly.

  - UPD will only share your name with other University offices on a need to know basis.

  - UPD can coordinate with the appropriate Dean and assist you in dealing with any academic issues that arise from your sexual assault.

With this information in mind, **I wish / do not wish\*** my name to be released. (\*Strike out the option that you DO NOT WANT).

Date: 3/7/23

Signature: Arianna Newell        Witness: Mariana Prucato

Rev. 02/2011



## General

| | |
|---|---|
| **Student Number** * | **Last Name** * |
| B00817235 | Treadwell |
| **First Name** * | **Middle** / **Suffix** |
| Zion | Wellington |
| **Additional Id #1** | **Additional ID #2** |
| 1106378 | 50951 |
| **Gender** | **Identified Gender** |
| Male | |
| **Date of Birth** * | **Preferred Name** |
| 9/10/2001   Age 21 | Z |
| **Person Type** | |
| Student | ☐ Privacy Indicator    ☐ Gender Privacy |

**Save**

## Contact

| | |
|---|---|
| **Mobile Phone** | **Mobile Carrier** |
| 929-428-7085 | Verizon |
| **Local Phone** | ☐ Opt Out of Texts |
| **Email** | **Personal Email** |
| TREADWZW01@mail.buffalostate.edu | ZTREAD0910@GMAIL.COM |
| **Perm. PO Box** | **Combination** |

**Save**

## Student Assignments

| | Hall | Floor | Room Number | Bed | Room Type | Suite | Check In | Check Out | P.O. Box | Combo | Phone | Moved In | Moved Out | Status | Net Port ID | Assigned By | Assigned With | Assigned On | Last Updated On | Last Updated via | Campus Area |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ⋮ | Moore Complex | 4 | D422 | 1 | MC Double | MC D416 | 1/28/23 | 5/20/23 | | | | | | Default | | Scheduled Report | Rollover Assignment | 11/30/22 | 11/30/22 | New Assignment via Rollover | |

# EXHIBIT G

---

**From:** Pierino, Nina G <pierinng@buffalostate.edu>
**Sent:** Monday, September 11, 2023 12:17:29 PM
**To:** Treadwell, Zion W <treadwzw01@buffalostate.edu>
**Subject:** RE: Witness declarations

Hello Zion,

Thank you for letting me know about your witness. The board intends to call college personnel which would be University Police and the reporting individual has received a notification regarding the hearing. I also saw an email from your attorney's office, please let them know we cannot provide direct communication with a student's adviser, you are responsible for communicating any information regarding the hearing with them.

Thank you,

Nina G. Pierino, M.S.
Associate Director
Student Conduct and Community Standards
Bengal Hall 14J
716-878-3051
pierinng@bufffalostate.edu

---

**From:** Treadwell, Zion W <treadwzw01@buffalostate.edu>
**Sent:** Thursday, September 7, 2023 4:29 PM
**To:** Pierino, Nina G <pierinng@buffalostate.edu>; rupp@rupppfalzgraf.com
**Subject:** Witness declarations

I am writing to inform you that Novan Slater will serve as a witness at the hearing. Please advise of any witnesses the Board intends to call.

Get Outlook for iOS

# EXHIBIT H



**Student Conduct and
Community Standards Office**
Bengal Hall Room 14
1300 Elmwood Avenue
Buffalo, NY  14222-1095
Tel: (716) 878-3051
Fax: (716) 878-3821
**www.buffalostate.edu**

September 13, 2023                              **#202300286**

Zion Treadwell
Student Apartment Complex 529C
SUNY Buffalo State

Dear Zion Treadwell:

This letter serves as a follow up to the student conduct board hearing held on September 12, 2023 regarding the incident that occurred on March 04, 2023. The following determination has been made concerning your responsibility in reference to the Code of Conduct:

●**03.e Sexual Assault:** Unwelcome penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the consent of the victim.-*Not Responsible*

●**04.e Disruptive Behavior:** Impairing, interfering with, or obstructing the orderly conduct, processes and functions of the College or surrounding community. Behavior that may be representing a nuisance or danger to persons (including oneself) or property.-*Responsible*

●**03.a Non-consensual sexual contact:** Any intentional sexual touching without consent and/or by force.  -*Responsible*

The assigned sanction for these violations is as follows:

●Conduct Board Decision Justification: .  Comments: The board finds that Z. Treadwell is responsible for 3a: Non-Consensual Sexual Contact and 4e: Disruptive Behavior.  Z. Treadwell's testimony regarding how consent was given did not meet the university's definition of consent.  Z. Treadwell stated that the removal of clothes and the statement "don't be a stranger, let's go" was the form of consent that was given from the Reporting Individual.  In Z. Treadwell's testimony, he stated that there were text exchanges between he and the Reporting Individual that were not able to be provided by him because he no longer had access to the messages from the BLK app (but has since requested access through the legal proceedings, external to the Student Conduct process at Buffalo State University).  In Z. Treadwell's testimony, he indicated that the messages provided by the reporting individual were not representative of their full conversations on the BLK app.  In Z. Treadwell's testimony, he indicated that he and the reporting individual only communicated via the BLK app. The portion of messages provided to University Police Investigator Cahoon showed the R.I. not wanting to engage in sexual intercourse via her messages before she arrived on campus. Without testimony from the Reporting Individual and the entirety of the messages that occurred between the R.I and Z. Treadwell, the board could not find Z. Treadwell responsible for 3e: Sexual Assault. From his own testimony and the information provided to the board during the proceeding, the board does not find Z. Treadwell received affirmative consent.



**BUFFALO STATE**
The State University of New York

Student Conduct and
Community Standards Office
Bengal Hall Room 14
1300 Elmwood Avenue
Buffalo, NY 14222-1095
Tel: (716) 878-3051
Fax: (716) 878-3821
**www.buffalostate.edu**

●Anti Sexual Violence Training : You are required to contact Candace Williams walczycr@buffalostate.edu to schedule your training.  A certificate of completion must be emailed to studentconduct@buffalostate.edu directly by your due date. .  Due Date: 09/27/2023

You have the right to an appeal of the above decision.  *Appeals must be made in writing within 3 days of receiving notification of the outcome of the hearing. Appeals must be submitted  to the Student Conduct and Community Standards Office for review via this link within the 3 day period; Specific reasons for the appeal, such as procedural error or inappropriate application of college regulations, must be included as the reason for the appeal.*

***You are encouraged to access resources on the Student Conduct and Community Standards website. Please click on the links for direct access:***
***Student Conduct Process***
***Appeal Instructional Video***
***Appeal Form Link***

Student Accessibility Services or SAS ensures that Buffalo State students with disabilities receive the academic accommodations and services they are legally entitled to. Additionally, SAS is dedicated to making sure that all aspects of college life are accessible to students with disabilities, and providing training and education to the campus community.   Please copy and paste the link and complete the form to indicate the type of accommodations and/or services that you need.  If you are not already registered with the SAS Office, please register with the office by following the steps listed on their website http://sas.buffalostate.edu/students.

If you have any questions or need clarification on anything, please feel free to contact me.

Sincerely,

*Nina G. Pierino*

Nina Pierino
Associate Director

cc:     Pave File
        File-Student Conduct and Community Standards

# EXHIBIT I

September 16, 2023

**Via Buffalo State Appeal Form & E-Mail (studentconduct@buffalostate.edu)**
Buffalo State Appeals Board
Student Conduct and Community Standards Office
Bengal Hall Room 14
1300 Elmwood Avenue
Buffalo, New York 14222-1095

        Re:    Zion Treadwell Appeal Request
                Case No. 02300286

Dear Members of the Appeal Board:

      Please accept this letter in support of my appeal in the above-referenced matter.

The appeal is based on Procedural Error and Inappropriate Application of College Regulations.[1]

This letter is written with third-person references to "Mr. Treadwell," although it is coming from

me.

**Grounds for Appeal**

**Point I**

**Procedural Error**

      "Conduct proceedings are governed by the procedure set forth in the *Sexual*

*Violence Addendum* as well as federal and New York State law, ***including the due process***

***provisions of the United States and New York State Constitution*.**  *Addendum*, Section V

(emphasis added).  It is a fundamental principle of American Due Process that a party accused of

misconduct is entitled to confront the witnesses and evidence against him.

---

[1] As alleged violations under the Buffalo State *Code of Conduct* ("Code"), the investigation and adjudication of the alleged charges are governed by the policies enumerated in the *Code* and Buffalo State *Code of Student Rights, Freedoms, and Responsibilities and Sexual Violence Addendum* ("Addendum").

In this case, the Student Conduct Board (the "Board") went beyond the testimony offered before it to substitute its own opinion and judgment as a replacement to the evidence on the record.  In doing so, the Board's actions were entirely one-sided and biased, demonstrating an effort to discredit Mr. Treadwell's testimony—even though his testimony was entirely *uncontradicted* and supported by witness testimony, whereas the complaining non-student, Ms. Arianna Newell, did not attend the hearing to provide testimony despite receiving notice.  As such, Mr. Treadwell was not afforded the opportunity to confront his accuser—in blatant violation of the requirements of American Due Process.

<u>Absence of Complaining Non-Student</u>

The absence of the complaining non-student, Ms. Newell, was a clear procedural error that was also in violation of Mr. Treadwell's due process rights and would normally lead to dismissal of the case.  Under the *Code*, where a complainant does not appear at the hearing and has received notice, then the case may be dismissed.  Section 6(3)(b).  Ms. Newell did not attend the hearing despite receiving notice of the same.  *See* Attachment A.  Normally, Ms. Newell would be the complainant in this action, which would then have caused the case to be dismissed when she failed to appear at the hearing.  The Board did not even consider this.

However, due to her non-student status, Ms. Newell was the reporting individual for whom the Student Conduct Office stepped into the shoes of in order to bring these charges against Mr. Treadwell.  If that is the case, then the Student Conduct Office, or Investigator Cahoon as the referring official, is the complainant against Mr. Treadwell.  This status confers responsibility upon the Student Conduct Office or Investigator Cahoon to act as a complainant is required to under Buffalo State policies.

Under the *Code* (Section 4) and *Addendum* (Section VII, E), the complainant is required to represent herself and it is her responsibility "to notify witnesses of the time and place of the judicial hearing." Buffalo State policies therefore impose the responsibility upon the complainant to bring forth all relevant witnesses for the charges. In this case, Ms. Newell is arguably one of the most relevant witnesses to be brought before the Board in its adjudication of the charges *she* alleged. As the complainant, the Student Conduct Office or Investigator Cahoon was required to ensure Ms. Newell's attendance. However, Ms. Newell failed to attend, without providing any explanation, notice, or reason. The Board even acknowledged that without Ms. Newell's testimony, the Board was unable to find Mr. Treadwell responsible for sexual assault. *See* Attachment B.

American Due Process requires that a party accused of misconduct is entitled to confront the witnesses against him, including and especially, his accuser. Regardless of which title the Board chooses to identify Ms. Newell as—complainant or reporting individual—the Board failed to abide by due process requirements enumerated in the College's policies, including federal and New York State law, by failing to afford Mr. Treadwell the opportunity to cross-examine his accuser, the complaining non-student.

Buffalo State's creation of a strawman complainant to stand in for Ms. Newell is total and utter sophistry. Whether the Student Conduct Office or Investigator Cahoon stood in for Ms. Newell as the "official" complainant, Buffalo State's enabling of such a policy has orchestrated an end run around fundamental due process rights that are integral to American Jurisprudence.[2] Buffalo State has produced a policy that has enabled the complainant to be

---

[2] And supposedly integral to Buffalo State policies. *See Addendum*, Section V ("Conduct proceedings are governed by the procedure set forth in the *Sexual Violence Addendum* as well as federal and New York State law, ***including the due process provisions of the United States and New York State Constitution***.") (emphasis added).

converted into *any* individual other than the reporting individual. In this way, Buffalo State shirks its obligation to ensure the due process rights of the accused are met. It is absurd that Buffalo State would commit such chicanery to act as if it is in compliance with the fundamental right to American Due Process. This abhorrent policy is insulting to American Jurisprudence and Buffalo State should be ashamed to have produced such a backwards policy that is antithetical to our democratic processes.[3]

It is a fundamental right for the accused to confront the witnesses against him, including his accuser. Here, fully enabled by Buffalo State policies and procedures, the accused individual is not able to confront his accuser—but instead is provided the illusion of cross-examination in the form of confronting the strawman complainant. The strawman's testimony is entirely hearsay. Here, the strawman was not present at the alleged incident and does not have any inside knowledge to the event in question. Yet his testimony—hearsay and provided through a perverse game of telephone—is supposed to be taken as if it is that of the accusing individual. Furthermore, any cross-examination of the strawman is stymied by the ridiculous procedure the Board employs to permit questioning. The respondent does not directly ask questions of the strawman, but has his questions "translated" by the Board—another perverse game of telephone employed by Buffalo State to defile the integrity of an adjudicative process.

It is absolutely unconscionable that Buffalo State would allow a strawman—in the form of Investigator Cahoon or the Student Conduct Office entity—to be able to stand in for a complainant. If this is the case, then Buffalo State can get around a non-present complainant *every time* an individual is accused of misconduct. There is nothing to stop Buffalo State from

---

[3] Similar features in a seemingly adjudicative process, such as providing the illusion of due process, have been employed by the former Soviet Union. Buffalo State's procedure, while pretending to comply with American Jurisprudence, spits in the face of our democratic process and is entirely un-American.

4

calling in any Campus member to stand in for a complainant in order to creatively deprive an accused individual of due process while pretending to comply with, but merely providing the illusion of due process. Due process is a fundamental right in American society and Mr. Treadwell has been deprived of that right by the Board and Buffalo State.

<u>Insufficient Investigation</u>

Buffalo State promises students the right to have complaints "investigated and adjudicated in an impartial, timely, and *thorough* manner." *Addendum*, Section V (emphasis added).

A. *Failure to Interview Witness Novan Slater*

There should be no question that a thorough investigation would involve the interview of any potential witnesses to an alleged incident. However, no attempt was made by Investigator Cahoon to interview Novan Slater, a suitemate who was present in the dorm area during the alleged incident. There is nothing on the record to suggest that Investigator Cahoon attempted to locate and interview *any* witnesses at all to the alleged incident. His failure to make any attempt to locate and identify additional witnesses demonstrates a complete lack of initiative and effort for the investigation to be considered "thorough" as required under Buffalo State's own rules and policies.

B. *Failure to Gather All Information*

Likewise, a thorough investigation would also involve locating all relevant tangible evidence pertaining to an alleged incident. However, again, Investigator Cahoon did not make any attempt to access the full conversation between Ms. Newell and Mr. Treadwell on the BLK app. In his testimony, Investigator Cahoon admitted that he failed to ask Ms. Newell for any additional texts and merely accepted the texts she *selectively chose* to provide. Surely an

investigator reading the provided texts would question the surrounding context, especially considering the texts conveniently cut off *before* any discussion indicating Ms. Newell's decision to visit campus and arrangements to do so.  This is particularly problematic, as Ms. Newell selected the content to provide Buffalo State and then she conveniently decided not to appear, depriving Mr. Treadwell of any opportunity to fully and fairly challenge her contentions.

Clearly Ms. Newell visited campus, however, the text exchange detailing this decision and any conversation between her and Mr. Treadwell concerning the arrangements for her arrival are glaringly absent from the evidence file.  It is difficult to understand why Investigator Cahoon would consider these texts to be irrelevant or why he would fail to even ask Ms. Newell for them.  It is even more difficult to understand how the existence of this insufficiency would allow for Investigator Cahoon's investigation to be considered "thorough."

Crediting the texts she provided—that were blatantly curated and failed to show the full context of the conversation between Mr. Treadwell and Ms. Newell—was an unmistakable procedural error by the Board.  In its justification for its decision, the Board recognized that Mr. Treadwell informed them "that the messages provided by the reporting individual were not representative of their full conversations on the BLK app."  *See* Attachment B.  The Board then stated, "Without testimony from the Reporting Individual and the entirety of the messages that occurred between the R.I. and Z. Treadwell, the board could not find Z. Treadwell responsible for 3e: Sexual Assault."  *See* Attachment B.  However, in the next sentence, the Board *chose* not to credit Mr. Treadwell's *uncontradicted* testimony that he received affirmative consent—despite its own admission and recognition that Ms. Newell did not appear to testify otherwise.  This decision constituted a serious procedural error by the Board to the prejudice of Mr. Treadwell's defense and civil rights.

<u>Failure to Provide Mr. Treadwell with Totality of Evidence File</u>

Buffalo State failed to provide Mr. Treadwell with all available evidence in violation of its own policies.  Buffalo State promises students the right to "review available evidence in the case file (or otherwise held by the College)."  *Addendum*, Section V; *see also Code*, Section 5(2)(f).

Despite Mr. Treadwell's multiple requests to review the *entirety* of Buffalo State's evidence gathered in the investigation, Mr. Treadwell was not afforded the opportunity to review all available evidence.  Mr. Treadwell first requested this information by email dated May 5, 2023 to Ms. Nina Pierino, Associate Director of the Student Conduct and Community Standards Office.  *See* Attachment C.  This email went unanswered.  *See* Attachment C.

Mr. Treadwell again requested "all evidence" collected in the investigation via email on September 5, 2023.  *See* Attachment C.  While Ms. Pierino responded to this email, she failed to acknowledge or specifically respond to Mr. Treadwell's request regarding the College's evidence.  *See* Attachment C.  On September 6, 2023, Mr. Treadwell repeated his request for all available evidence, asking Ms. Pierino to advise whether any additional evidence existed, and if so, to forward a copy of the same for his review prior to the hearing.  *See* Attachment C.  On September 7, 2023, with only two business days until the hearing, Ms. Pierino finally responded to Mr. Treadwell's request with various documents attached.  *See* Attachment C.  Notably absent from this attachment, however, was the surveillance footage viewed by the Board at Mr. Treadwell's hearing.

At his hearing, Mr. Treadwell timely objected to the surveillance footage as it was not provided to him prior to the hearing as is required by Buffalo State policies.  The Board acknowledged Mr. Treadwell's objection, taking it "under advisement," but chose to review the

7

footage anyway. The failure to disclose this evidence to Mr. Treadwell prior to the hearing yet

to use it as record evidence to find him responsible on two charges was another procedural error

committed by the Board.

<u>Improper Evaluation of Evidence on Record</u>

The Board improperly evaluated the evidence on the record. "No evidence other

than that received at the hearing may be considered by the hearing board. Written statements by

anyone not present at the hearing are not acceptable." *Addendum*, Section VII (E).

A. *Absence of Complaining Non-Student*

Again, the absence of the complaining non-student should result in a dismissal of

all charges. The complaining non-student did not attend the hearing and as such, did not present

her own case. If the Student Conduct Office, or Investigator Cahoon as referring official, were

expected to present the case on the complaining non-student's behalf, neither the Student

Conduct Office nor Investigator Cahoon presented any evidence outside of the conveniently

cropped texts provided by Ms. Newell—texts that the Board acknowledged did not provide the

full context and therefore did not demonstrate a lack of consent. *See* Attachment B.

Without any testimony provided by the complaining non-student, there was no

testimony presented to contradict the testimony of Mr. Treadwell or witness, Mr. Slater. The

Board itself recognized that a lack of consent could not be found, where Ms. Newell did not

testify and the texts she provided were incomplete. *See* Attachment B. Thus, it was a procedural

error both for the Board to then credit written statements of an individual who was not present

for the hearing *and* for crediting evidence that the Board itself noted as incomplete.

8

### B. *Inconsistent Logic*

The Board employed inconsistent logic to reach its conclusions.  Mr. Treadwell offered uncontradicted testimony that Ms. Newell both initiated, affirmatively consented to (by words and actions), and enthusiastically participated in sexual intercourse with Mr. Treadwell:

> When **Ms. Newell entered my dorm room**, I was working on my computer and did not immediately acknowledge her.  **She then said to me "You're going to act like a stranger?" and approached my chair**.  She **initiated physical contact** with me by **sliding her hands down my chest from behind**.  **She then removed her own clothing** with no help from me.  **She bent over a nearby chair** with no help from me.  **She signaled that she wanted intercourse** and I obliged, entering her vagina from behind.  **She began to moan, then reached behind my hips with her hands and pulled me closer to her with her hands on my buttocks**.  She **continued to moan** as I thrust into her.  After about 2-3 minutes of intercourse, I was put off by what I considered to be an odor coming from Ms. Newell's vagina.  I then ended the sexual aspect of the encounter by pulling out.  Contrary to Ms. Newell's account, I did not ejaculate during this encounter.

The *Addendum* explains, "Consent can be given by *words or actions*, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity."  Section II (emphasis added).  Ms. Newell demonstrated affirmative consent by her words and actions.  She initiated sexual contact by sliding her hands along Mr. Treadwell's chest from behind as he worked on his computer, removing her own clothing, and bending herself over to position herself for Mr. Treadwell to have sexual intercourse.  Ms. Newell continued to give consent as an enthusiastic participant in the sexual activity both by moaning and reaching behind herself and Mr. Treadwell, placing her hands on Mr. Treadwell's buttocks, and pulling him in deeper for the purpose of encouraging him and pulling him in for deeper penetration and copulation.

Mr. Treadwell provided uncontradicted testimony that Ms. Newell provided affirmative consent by *both her actions **and** words*, and there is nothing to contradict this.  The

Board's decision to interpret Ms. Newell's words differently was not supported by the record evidence.  Further, it is unclear how the Board could find that Mr. Treadwell is not responsible for sexual assault—reasoning that there was no showing of a lack of consent—but is responsible for non-consensual sexual contact—using conclusory reasoning that for *this* charge, there was a showing that Ms. Newell did not provide consent.  Such logic is backwards and inconsistent.  Furthermore, the record shows that Ms. Newell provided affirmative consent through her actions and words as presented in Mr. Treadwell's uncontradicted testimony.  Mr. Treadwell went on to provide testimony as follows:

> I wish to emphasize that Ms. Newell was a full and willing participant in our sexual activity that day.  The encounter was entirely consensual from start to finish.  In no way did I force, coerce, or pressure Ms. Newell to have sex with me.  She was an entirely willing, active, and eager participant in the consensual sexual activity. **She initiated it.  She moaned with pleasure during it.  She clutched my buttocks and tried to pull me closer to her and my erection deeper into her.**

Ms. Newell did not appear before the Board to provide opposing testimony.  Thus, Mr. Treadwell's testimony is uncontradicted on the record.  For the Board to decide otherwise, in the complete absence of evidence or testimony to the contrary, is illogical and a grave procedural error.

The Board recognized that the "portion of messages" (*see* Attachment B), which were selectively provided by Ms. Newell, showcased a conversation in which she expressed she did not want to engage in intercourse, but the Board also acknowledged that the full context of the messages was blatantly missing—namely, messages where Ms. Newell clearly arranged to visit Mr. Treadwell at his dorm room.  Even if Ms. Newell initially declined, her actions and words demonstrated a different decision and mindset.  Just as the rules recognize and allow for a party to end consent to particular activity, the reverse should also be true: Ms. Newell clearly

changed her mind, traveled to Buffalo State, and was an active and willing participant in sexual

activity.  All of her actions indicated consent, yet the Board refused to consider them.  Further,

Mr. Treadwell testified that it was Ms. Newell who initiated sexual contact by verbal expression

in conjunction with her own removal of her clothes and undergarments.  Mr. Treadwell also

testified that the other BLK messages that he could not access indicated that she was coming to

his dorm room to have sex.  Mr. Slater testified that there was nothing to indicate anything was

awry while Ms. Newell was visiting Mr. Treadwell.  Without Ms. Newell's testimony to the

contrary, Mr. Treadwell's testimony of the alleged incident is uncontradicted on the record.

However, the Board chose to disregard his testimony in favor of testimony that was non-existent.

This reasoning by the Board is a clear procedural error, particularly when Buffalo State

recognizes the ability of someone to change their mind.

### C. *Substitution of Board's Opinion for Evidence on Record*

The Board's substitution of its own opinion and judgment for evidence on the

record demonstrates a blatant disregard for the adjudication process.  A disregard of the

adjudication process is the clearest procedural error that can be made by any adjudication board.

The Board admitted that it did not have all the information and evidence pertinent to the

complaint, which affected the adjudicative process and Mr. Treadwell's procedural rights.  More

specifically, Investigator Cahoon admitted that he did not obtain all of the messages between

Ms. Newell and Mr. Treadwell on the BLK app, a glaring deficiency.  The Board acknowledged

that there were clearly messages missing from the record (due to the selective nature of the

messages that Ms. Newell chose to provide), and worse, the Board then used the selective

content against Mr. Treadwell by reasoning he did not obtain consent based on a previous conversation with Ms. Newell that was taken out of context.[4]

Crediting the text messages, without having all of them for context was a procedural error. The Board had *part* of a story and *admitted as such*. *See* Attachment B. Not crediting Mr. Treadwell's testimony regarding the messages was an additional procedural error, especially when there was contemporaneous evidence confirming that the complaining non-student changed her mind. The Board did not look at the evidence at the time of the act, only the evidence given some time before the encounter, the specific time of which is unknown because Ms. Newell did not provide time stamps and Investigator Cahoon failed to thoroughly investigate the timeline of events. Finally, the Board's substitution of its own judgment was a procedural error because the Board nonsensically discounted Mr. Treadwell's proof of consent (demonstrated by Ms. Newell's actions and words) without having any opposing proof on the record before it.

Disruptive Behavior Charge

The Board found Mr. Treadwell responsible for Disruptive Behavior, despite this charge never being discussed in either the hearing or the Board's reasoning for its determination. At the hearing, the charge was completely unpresented—for Mr. Treadwell to be convicted of a charge that was entirely unspoken on with zero proof to support the charge whatsoever is ludicrous. Not only did the Board fail to ask any questions related to this charge, but the Board also failed to provide any reasoning for its finding of responsibility. The Board punts its obligation away by failing to give any reasoning at all. This demonstrates a complete abdication of responsibility on behalf of the Board in full dereliction of its duty.

---

[4] It also worth noting that the conversation provided by Ms. Newell is not dated nor time stamped.

There is no evidence on the record to support a finding of responsibility for Disruptive Behavior. This charge is vague and it is unclear *who* Mr. Treadwell disrupted, or *what* campus processes were disrupted, or *what at all* was affected by Mr. Treadwell's use of the BLK app to have a visitor come to his dorm. Mr. Treadwell was not asked any questions related to this charge. Mr. Treadwell's suitemate, Mr. Slater, was not asked any questions related to the charge. The charge of "Disruptive Behavior" was completely unpresented at the hearing and the Board was silent in its reasoning for finding Mr. Treadwell responsible.

It is completely abhorrent and a gross procedural error that the Board chose to convict Mr. Treadwell on a charge that was vague and unclear, never discussed in the hearing, without any evidentiary support in the record, and completely unsupported in the Board's justification with zero reasoning provided. Buffalo State should be ashamed of how this hearing was conducted by the Board and should use this as an opportunity to reevaluate its policies and procedures and reeducate Board members accordingly. The Board's grave errors do not reflect how a proper adjudication process is intended to unfold and go against everything in the history, practice, and integrity of American Jurisprudence.

### Point II

### Inappropriate Application of College Regulations

The Board improperly evaluated evidence in the record, often substituting its own opinion and judgment and applying inconsistent logic to the reasoning provided in its judgment. The Board's actions demonstrate a biased effort to discredit Mr. Treadwell's testimony and designed for one purpose—to find him responsible on the charges.

Improper Evaluation of Evidence on Record

The Board improperly evaluated the evidence on the record.  "No evidence other than that received at the hearing may be considered by the hearing board.  Written statements by anyone not present at the hearing are not acceptable." *Addendum*, Section VII (E).

A.  *Absence of Complaining Non-Student*

Without Ms. Newell's attendance and testimony at the hearing, Mr. Treadwell's testimony is uncontradicted.  College policies require that an individual is present at the hearing to give testimony and that written statements will not be accepted in lieu of attendance.  Ms. Newell did not attend the hearing.  Mr. Treadwell attended the hearing and gave testimony.  Therefore, his testimony is uncontradicted.  Furthermore, his testimony is supported by the testimony provided by Mr. Slater.  There is nothing on the record at all to suggest that consent was not given.  The Board wholly failed to properly apply the College regulations in its reasoning and decision.

B.  *Inconsistent Logic*

The Board employed inconsistent logic to reach its conclusions and in doing so, failed to properly apply the College regulations in its reasoning.  It is unclear why the Board would find the record was insufficient to demonstrate a lack of consent for *sexual penetration* such that Mr. Treadwell is not responsible for sexual assault but simultaneously find the record showed a lack of consent such that Mr. Treadwell is responsible for *non-consensual sexual contact*.  It is unclear what sexual contact the Board inconsistently found to be lacking consent here.  Duly unclear is what logic the Board is employing—although it is clear that it is an inappropriate application of College regulations.

Ms. Newell provided affirmative consent through her actions and words as presented in Mr. Treadwell's uncontradicted testimony. To decide otherwise, in the complete absence of evidence or testimony to the contrary, is illogical and an inappropriate application of College regulations. To credit her story of non-consent flies in the face of her later actions indicating consent. She was entitled to change her mind. To apply mismatched logic is also an inappropriate application of College regulations.

### C. *Substitution of Board's Opinion for Evidence on Record*

The Board's substitution of its own opinion and judgment for evidence on the record demonstrates a blatant disregard for the adjudication process. Disregard for the adjudication process demonstrates the Board's inappropriate application of College regulations as the College has made every attempt to enumerate procedural rights, including due process, in the relevant adjudication policies.

By making its own interpretation of "Don't be a stranger, let's go," and disregarding Mr. Treadwell's testimony showing his interpretation of Ms. Newell's words and accompanying actions (initiating physical contact with Mr. Treadwell, undressing herself, positioning and presenting herself to Mr. Treadwell for sexual intercourse, moaning, and pulling Mr. Treadwell for deeper copulation), shows the Board's improper application of College regulations. As the only person present at the alleged incident and who testified at the hearing, and without any opposing testimony, Mr. Treadwell's testimony was the *only* testimony on the record before the Board. Instead of crediting Mr. Treadwell's testimony, the Board chose to substitute its own interpretation, which is an improper evaluation of the evidence and therefore improper application of the College regulations.

Bias

Many of the Board's errors during the adjudicative process demonstrate a bias against the male accused. Mr. Treadwell's testimony was not contradicted and yet the Board chose to disregard it. Crediting a "portion" of the BLK messages against Mr. Treadwell, while acknowledging the absence of a larger context, showed an anti-male, anti-accused bias attributable to the Board. The Board recognized the shortcomings of the investigation and still chose to overlook the incompleteness of the evidence in order to reach a conclusion that was unfavorable to Mr. Treadwell.

## **Conclusion**

For the above reasons, I respectfully request that you reverse the Board's decision to the extent it found me responsible for two charges. Thank you.

Sincerely,

Zion Treadwell

Attachment A: Email that Notice Was Provided to Ms. Newell
Attachment B: Conduct Board Decision Letter
Attachment C: Email Thread Requesting College's Evidence

16

# EXHIBIT J



**BUFFALO STATE**
The State University of New York

Student Conduct and
Community Standards
Bengal Hall - Lower Level
1300 Elmwood Avenue
Buffalo, NY 14222-1095
Tel: (716) 878-3051
Fax: (716) 878-3006

**www.buffalostate.edu**

October 2, 2023

#202300286

Zion Treadwell
Buffalo State College

Dear Zion:

The Student Conduct Appeals Board reviewed your appeal on September 29th, 2023. This letter serves as a follow up to your appeal of the decision made on September 13th, 2023 to hold you responsible for violations of the following sections of the Code of Conduct Policies on March 4th, 2023.

- **04e- Disruptive Behavior**
- **03a- Non-consensual Sexual Contact**

There is no indication of procedural error, inappropriate application of college regulations, new or compelling evidence, nor are the sanctions too severe. After reviewing the materials provided the appeals board felt that the finding of responsible was appropriate based on the definitions of the violations and sanctions were not too harsh for the finding of responsible of the above violations.

Your appeal is being denied and the sanctions will be upheld. If you have any further questions, please contact the Student Conduct and Community Standards Office at 716-878-3051.

Sincerely,

*Spencer Cottman*

Spencer Cottman
Student Conduct Coordinator

cc:    Pave file
        File- Student Conduct and Community Standards Office

# EXHIBIT K

| | |
|---|---|
| **From:** | Pierino, Nina G <pierinng@buffalostate.edu> |
| **Sent:** | Thursday, January 25, 2024 2:47 PM |
| **To:** | Drzewiecki, Margaret J. |
| **Cc:** | Rupp, Anthony |
| **Subject:** | RE: Z. Treadwell File |

You don't often get email from pierinng@buffalostate.edu. Learn why this is important

Hi Margaret,

Yes, Kristin.KleinWheaton@suny.edu.

**Nina G. Pierino, M.S.**
Associate Director
Student Conduct and Community Standards
Bengal Hall 14J
716-878-3051
pierinng@bufffalostate.edu

---

**From:** Drzewiecki, Margaret J. <drzewiecki@RuppPfalzgraf.com>
**Sent:** Thursday, January 25, 2024 10:12 AM
**To:** Pierino, Nina G <pierinng@buffalostate.edu>
**Cc:** Rupp, Anthony <rupp@RuppPfalzgraf.com>
**Subject:** RE: Z. Treadwell File

Thank you. Could you please provide your counsel's email address?

**Margaret Drzewiecki**
Associate


People at law®

---

1600 Liberty Building | Buffalo, New York 14202 | 716.854.3400 ext. 255 | email   

The information contained herein is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, distribution or use of this information by persons or entities other than the intended recipient is prohibited. If you receive this email in error, please contact the sender and delete the material from your computer. Email communications that are sent from a workplace computer or other business device or via a third party's email system may be viewed by others and, for that reason, may not be protected. Clients should not send any communications to Rupp Pfalzgraf  LLC from a computer or email account other than their own.

---

**From:** Pierino, Nina G <pierinng@buffalostate.edu>
**Sent:** Wednesday, January 24, 2024 4:22 PM
**To:** Drzewiecki, Margaret J. <drzewiecki@RuppPfalzgraf.com>
**Cc:** Rupp, Anthony <rupp@RuppPfalzgraf.com>
**Subject:** RE: Z. Treadwell File

You don't often get email from pierinng@buffalostate.edu. Learn why this is important

Hi Margaret,

This request will need to go through our legal counsel. I will provide the contact information for our counsel below:

**Kristin Klein Wheaton**
*Chief Campus Counsel – West Cam Campuses*
*(She, Her, Hers)*
Office of General Counsel
The State University of New York
H. Carl McCall SUNY Building
353 Broadway, Albany, New York 12246
Tel: 716.878.3648 or 518.320.1191
Cell phone:  518.410.1585
Fax: 518.320.1541
<u>**Mailing address: (PLEASE NOTE CHANGE IN ADDRESS):**</u>
c/o Buffalo State University
1300 Elmwood Avenue, Cleveland Hall – Room 412
Buffalo, New York  14222

Thank you,

**Nina G. Pierino, M.S.**
Associate Director
Student Conduct and Community Standards
Bengal Hall 14J
716-878-3051
pierinng@bufffalostate.edu

---

**From:** Drzewiecki, Margaret J. <drzewiecki@RuppPfalzgraf.com>
**Sent:** Wednesday, January 24, 2024 3:42 PM
**To:** Pierino, Nina G <pierinng@buffalostate.edu>
**Cc:** Rupp, Anthony <rupp@RuppPfalzgraf.com>
**Subject:** Z. Treadwell File

Dear Ms. Pierino:

My firm represents Mr. Zion Treadwell. We are pursuing legal action against Buffalo State and the Student Conduct Office for violating Mr. Treadwell's constitutional rights.

In furtherance of this action, please submit **the entirety of the file** that Buffalo State has collected regarding the allegations made against Mr. Treadwell, including but not limited to all investigation documents and evidence, surveillance footage, hearing transcript, etc.

Time is of the essence. Please advise when you will provide the requested information and materials.

Sincerely,
Margaret

**<span style="color:orange">Margaret Drzewiecki</span>**
Associate

**From:**       Drzewiecki, Margaret J.
**Sent:**       Thursday, January 25, 2024 3:13 PM
**To:**         Kristin.KleinWheaton@suny.edu
**Cc:**         Pierino, Nina G; Rupp, Anthony
**Subject:**    Buffalo State Case File for Zion Treadwell


Dear Ms. Klein Wheaton:

My firm represents Mr. Zion Treadwell. We are pursuing legal action against Buffalo State and the Student Conduct Office for violating Mr. Treadwell's constitutional rights.

In furtherance of this action, please submit **the entirety of the file** that Buffalo State has collected regarding the allegations made against Mr. Treadwell, including but not limited to all investigation documents and evidence, surveillance footage, hearing transcript, etc.

My understanding from the Buffalo State Code of Conduct is that such requests go through the Student Conduct Office—and I have already contacted Ms. Pierino of the Student Conduct and Community Standards Office requesting this information—however, she has instructed me that this request must go through you as legal counsel.

Time is of the essence. Please advise when you will provide the requested information and materials.


Sincerely,
Margaret


**Margaret Drzewiecki**
Associate



1600 Liberty Building | Buffalo, New York 14202 | 716.854.3400 ext. 255 | email



The information contained herein is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any review, distribution or use of this information by persons or entities other than the intended recipient is prohibited. If you receive this email in error, please contact the sender and delete the material from your computer. Email communications that are sent from a workplace computer or other business device or via a third party's email system may be viewed by others and, for that reason, may not be protected. Clients should not send any communications to Rupp Pfalzgraf LLC from a computer or email account other than their own.